Logue *v.* Gallagher et al., Appellants.

Argued September 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Webster Jones,* for appellants.

*Herbert Welty,* with him *Hyman A. Guth,* for appellee.

OPINION BY CUNNINGHAM, J., December 14, 1936:

We are not satisfied that the referee and board performed their duties in connection with this rather unusual workmen's compensation case in such a manner as to present fully and properly, for judicial review, the fundamental question in the case. It is not disputed, under the evidence taken before the referee, that John Logue, the husband of the claimant, suffered a fatal accidental injury while upon the premises of the alleged employer, E. A. Gallagher, about three o'clock on the afternoon of Sunday, June 24, 1934.

E. A. Gallagher had been engaged for some years in the business of hauling and trucking and had a garage at No. 3250 Ludlow Street, Philadelphia. In the claim petition it was averred that while Logue was removing the rim from a tire upon a truck belonging to Gallagher he received a head injury which resulted in his death at a hospital early the following morning. Apparently there was no eye witness to the accident, but

one of Gallagher's regular employees, Thomas McDermott, who was at work upon the tires of another truck, approximately fifty yards distant from the one upon which Logue was engaged, testified: "Well, the tire exploded and the rim got him." At the time of the accident Logue was not a regular employee of Gallagher. Since early in November 1933, he had been employed by Richards-Kelley Company as a full time "mechanic in the shop." Prior to the date of his employment with the Richards-Kelley Company he had been regularly employed by Gallagher, along with McDermott, who described the nature of their employment as "driving and repair work."

The underlying question in this case is whether there was any contract whatever of employment between Gallagher and Logue on the Sunday afternoon upon which the accident occurred. The compensation authorities seem to have directed their attention mainly to a consideration of the question whether Logue's alleged employment was "casual in character and not in the regular course of the business of the employer," and therefore within one of the exceptions inserted in Section 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736. They arrived at the conclusion that although the employment was casual it was in the regular course of the business of the employer, and therefore made an award of compensation, upon which judgment was entered by the court below. Before any question relative to the nature of the employment could properly arise, it was essential that there be upon the record either a formal admission, or competent evidence, of the existence of a relationship of employer and employee. Here, it is earnestly contended by the alleged employer and his insurance carrier that Logue was not in the employ of Gallagher in any capacity whatever, but had borrowed the truck, upon which he was working at the time of the accident, from

Gallagher for the purpose of moving his (Logue's) household goods to a new residence on the following day; and that he was not engaged in any way in the furtherance of the business or affairs of his employer, but solely in preparing the truck for his own use.

Obviously, the first pertinent inquiry relates to the reason for Logue's presence at Gallagher's garage that Sunday. On this question the evidence is also undisputed. McDermott, above mentioned, testified that approximately a week prior to the Sunday in question Logue had told him that he wanted to see Gallagher about borrowing a truck in order to move. Referring to the Sunday of the accident, McDermott testified that he had been instructed by Gallagher to report for work in repairing tires that Sunday and that Logue came with him to the garage under these circumstances. After testifying he met Logue following the ten o'clock mass at their church, McDermott continued: "Q. What did you do after you met outside the church? A. I met him outside and spoke to him so I told him, 'John, I'm in a hurry, I ain't got no time, I got to get back and go to work,' well, he said, 'You going to work?' I said, 'Yes, I got to change my clothes' so he says, 'I got a machine here I want to see Gallagher anyhow, I'll drive you down,' I said, 'I'll meet you on Pennsylvania Avenue in about ten or fifteen minutes, at the corner,' so then we went down together. Q. What did he say next, or what did you say next, or what did you do? A. I went in, had my instructions what to do Saturday."

There was testimony by Logue's landlord that he had notified him to vacate the house in which he was then living because the rent was in default. From this point on there are conflicts both of fact and of law in the case, some of which were for the consideration of, and disposition by, the referee and board, but the record discloses rulings by the referee which involved ser-

ious questions of law and which, in our opinion, seem to have unjustifiably prevented Gallagher from presenting his full defense.

The claim petition as filed contained merely the general averment that the deceased employee was, at the time of the accident, employed by E. A. Gallagher. The answer specifically denied "there was any contract of employment made under and subject to which the compensation act is applicable." At the beginning of the hearing before the referee, counsel for claimant moved to amend the petition so that the paragraph relative to the nature and duration of the alleged employment would read: "John Logue was in the employ. of E. A. Gallagher, doing Sunday work for which he was to receive fifty-five cents an hour." Claimant, of course, had the burden of sustaining this averment by competent evidence. She endeavored to meet that burden by proof of admissions alleged to have been made by Gallagher after the accident. The claimant, one of her daughters, and two relatives, James Mulligan and Joseph Graham, all testified to statements by Gallagher. The following testimony of Mulligan is typical: "Q. What was that conversation? A. I asked him [Gallagher] if John [Logue] was working for him and he said, 'Yes,' and I said, 'Are you sure?' and he said, 'Yes,' and I said, 'What was he doing?' and he told my wife and her sister just what had happened in the accident." The claimant testified Gallagher told her he "put" Logue "to work that Sunday."

We have not been able to find any testimony upon the record supporting the averment that there was an agreement or understanding that the decedent "was to receive fifty-five cents an hour" for services rendered that afternoon. The strongest item of evidence with relation to this subject is in the testimony of Mulligan and reads: "Q. Did you ask him [Gallagher] how much he was to pay John for his employment? A. No, sir,

I did not. Q. Did he offer to tell you? A. Well, he told me how much he had been making and so I asked him how much he had been making, so he asked the bookkeeper and he looked it up and said, 'Nealy had been getting fifty cents an hour and that John was a fifty-five cents an hour man.' " The only finding which this testimony would support is that during the decedent's prior and regular employment with Gallagher he had been paid at the rate of fifty-five cents an hour. It is essential that claimant show that Logue was then performing "services for another for a valuable consideration": Act of June 2, 1915, P. L. 736, Sec. 104, 77 PS §22.

Gallagher made a general denial that he had told these witnesses Logue was "working" for him when injured and asserted that the only statement made to them about wages related to the time of his previous employment, and that when Logue left he was getting fifty cents an hour.

Our principal difficulty in this case arises out of the action of the referee in striking out of the record the testimony of Gallagher relative to a conversation which Gallagher asserted occurred between Logue and himself when Logue arrived at the garage that Sunday. As we understand the record and the statement of counsel for appellants during the oral argument, part of this evidence was received, but subsequently stricken out, and the remainder rejected. The record is somewhat confusing, but, for present purposes, the matter may be treated as an offer by counsel for appellants to prove by Gallagher that when McDermott and Logue arrived together at the garage about eleven o'clock on Sunday morning, the following conversation took place between Gallagher and Logue: Logue told Gallagher he was going to move and asked whether he could borrow a truck to which Gallagher replied, "Yes, you can get a trailer and the old G. M. C. tractor." Logue

then said "Well, I want to get it early, how about a key?" to which Gallagher replied, "You can go over and get a key off Joe"; and to show that after a few moments of general conversation Logue "stepped out on to the garage." This evidence seems to have been excluded upon the ground that as Logue was dead Gallagher was incompetent to testify to any matter which occurred between them prior to the accident.

Aside from the fact, as stated by our Supreme Court in *Johnston v. Payne-Yost C. Co.*, 292 Pa. 509, 141 A. 481, that the rules of evidence are not applied in these cases with the same rigor as in litigation before a jury, it may well be doubted whether the testimony given and proposed to be given by Gallagher was incompetent. The action by claimant, in her own behalf and in behalf of two of her children, was not based upon the alleged contract of employment. As in the case of the right of action conferred upon a widow by the Act of April 26, 1855, P. L. 309, to recover damages for the death of her husband when caused by the negligence of a third party, her right to receive compensation in certain cases, regardless of the presence or absence of negligence, was likewise conferred by statute. The claimant's right of action is distinct from the right her husband would have had, if he had survived. It is therefore doubtful whether the Act of May 23, 1887, P. L. 158, has any application. See *Mann v. Weiand*, 81* Pa. 243, and Annotation to *Souther v. Belleau*, 203 Ky. 508, 262 S. W. 619, at 36 A. L. R. 959; also *Kaczorowski v. Kalkosinski, Admr.*, 321 Pa. 438, 184 A. 663. In addition, claimant had undertaken to bring herself within the terms of the statute through showing the relationship of employer and employee by proof of Gallagher's admissions. Clearly, he was entitled to contradict or explain such admissions by stating his version of what occurred when Logue arrived upon the premises. Whatever the correct answers to these

questions of law may be,—and we do not pass upon them finally at this time—it was the duty of the referee to receive the testimony, subject to the objection of counsel for the claimant, so that the questions of law might be properly presented to and ruled upon by the courts. We do not agree with the statement in the opinion of the board that this evidence "would not suffice to change the decision." On the contrary, it goes to the very heart of the case.

Moreover, we understood counsel for appellants to say at the oral argument that he was and is prepared to show that Logue when injured was working on the truck which Gallagher told him he might use the following day to move his household effects. It seems to us that it should be quite possible to identify with certainty the particular trailer or tractor upon which Logue was working at the time of the fatal accident. McDermott was only a few yards away, and although his back was turned at the moment of the accident he and the other persons who heard the explosion and sent the victim to the hospital can doubtless identify the truck upon which Logue was engaged. It is apparent that evidence of this nature would be of material assistance in arriving at the truth of this case.

Upon consideration of the record as it now stands, we think the interests of justice require that the alleged employer be afforded an opportunity to state upon the record his full version of the conversation between the decedent and himself on the day of the accident and an opportunity to identify, if he can, by competent evidence, the vehicle upon which decedent was working at the time of his injury, and that the claimant be given a further opportunity, if she so desires, to submit additional competent evidence in support of her averment that the relationship of employer and employee existed between Gallagher and her husband upon the day in question.

336

The judgment upon the award is vacated and the record remitted to the court below to the end that it may be returned to the board for further proceedings not inconsistent with this opinion.