James *v.* Shapiro et al., Appellants.

Argued March 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Henry Temin*, with him *Todd Daniel*, for appellants.

*Samuel Kravitz,* for appellee.

OPINION BY RHODES, J., April 28, 1939:

In this workmen's compensation case the controlling question is whether deceased was an employee of defendant Shapiro at the time of his death. Claimant, the widow of deceased, was awarded compensation by the referee. On appeal the Workmen's Compensation Board affirmed the referee's findings of fact, conclusions of law, and award. Defendants' appeal to the court below was dismissed, and judgment entered for claimant.

Deceased had been employed by Shapiro for ten years prior to his death as an assistant janitor in the latter's apartment house, known as Chatham Court, located at 49th and Locust Streets, Philadelphia. Shapiro, called as on cross-examination by claimant, testified that the last day deceased was employed by him was March 24, 1937. "A. I met him downstairs in the boiler room. He had been drinking for some time. I met him downstairs between five and five-thirty and said, 'Where were you the whole day?' and he said, 'O. k., O. k.,' He was very much drunk but that was his habit and I said, 'I don't think you are going to work here any more,' and he said, 'O. k., I am going to resign.' Q. You paid him $12 a week? A. Yes. Q. When did you pay him his salary? A. Weekly, every Saturday. Q. And on March 24th did you give him any money? A. $6 for the three days and $15 which he had with me—$21. Q. Cash or check? A. Cash. Q. Did you get a receipt for the $15? A. I got a receipt for $21. Q. Do you have the receipt with you? A. I have it here." The receipt read as follows:

"Chatham Court Aparts

"Allegheny 7168                J. Shapiro

"49th & Locust Streets, Philadelphia        3-24-37

"Received from Joseph Shapiro twenty one dollars

$21.00/100 in full payment to date. I am resigning my position at Chatham Court Apts. 49th and Locust Sts.

"(s) Arthur James"

He testified further that on March 25th at about 11 a. m. he saw deceased walking in the yard "just passing by." He was asked: "Q. How was he dressed? A. The same as usual—he never had any different dress. He wore all the time the same clothes—plain, ordinary common clothes. Q. The clothes he did his work in? On the 25th he wore the same clothes he did on the 24th and prior to that, as far as you could see? A. That's right." They had no conversation, and Shapiro did not see deceased after that. He first learned of his death at 7 o'clock that evening, when he was informed by one of the tenants that "Arthur is lying bleeding on the Locust Street side," on the public pavement. He called the police, and by the time he reached the scene the body had been removed to the hospital. Shapiro stated that deceased's regular hours were from 7 or 7:30 a. m. until 5 or 5:30 p. m., although in an emergency he might work after 5:30. At one time he had lived on the premises, but for two months prior to his death he had been living at his sister's home. "One who calls an adverse party as upon cross-examination is concluded by his testimony, if uncontradicted *(Dunmore v. Padden,* 262 Pa. 436 [105 A. 559]; *Krewson v. Sawyer,* 266 Pa. 284 [109 A. 798]; *Felski v. Zeidman,* 281 Pa. 419 [126 A. 794]; *Morningstar v. R. R.,* 290 Pa. 14 [137 A. 800]), and this includes not only his testimony as developed by the party who called him, but also statements then elicited by his own counsel which are merely explanatory of such testimony": *Readshaw et ux. v. Montgomery,* 313 Pa. 206, at page 209, 169 A. 135, at page 137. It cannot be said that the testimony of Shapiro adduced by claimant as on cross-examination bore the stamp of incredibility, or that there was any improbability in his statements so as to deprive them of credit. See *Marach v. Kooistra et al.,* 329 Pa. 324, 327, 198 A.

66; *Burke v. Kennedy*, 286 Pa. 344, 133 A. 508. To the extent that this testimony was uncontradicted, claimant was bound by it.

Claimant produced one of the tenants, who testified that she saw deceased, at about 10:30 a. m. on March 25th, dusting in the hall with a dust mop, dressed in a brown suit, "his usual attire." That evening when informed that he was lying outside she went out to see him. He was lying flat on his back on the sidewalk with his head toward the curb of Locust Street on the side of the apartment house. When the body was raised the dust mop previously mentioned was found back of his head. Deceased was wearing the same brown suit. Charles W. Kirkhoff, employed by Shapiro as acting superintendent and janitor, was called by claimant, and testified that he saw deceased at 7 a. m. on March 25th, and "off and on" throughout the day. He did not know "whether he was working or not, but he was going through the hall," and "he had a dust brush with him." He did not notice deceased remove any garbage. At 5:30 p. m. he saw him going toward the boiler room with a dust brush in his pocket. Kirkhoff had no authority to hire or discharge, and Shapiro did not tell him that he had discharged deceased. Another witness for claimant, Buster Newman, testified that he saw deceased at 10 a. m. on March 25th, dressed in overalls, drawing garbage from the apartment house and putting it in a can. Shapiro stated that he looked for Kirkhoff all day on the 25th, but could not find him. This does not seem improbable, in view of the fact that Chatham Court apartments consist of five separate buildings, containing sixty-six apartments. When deceased resigned or was discharged, Shapiro took from him the keys which deceased had used while employed. On the 25th Shapiro employed in deceased's place another who was obtained that day through an employment agency.

We have recited the portions of the testimony material

to what, in our opinion, is the controlling issue in this case. From all of it, the referee made two findings of fact as follows:

"7. When the decedent was found lying on the pavement, he was in his working clothes and there was found beside him a dust mop which he was accustomed to using in his work.

"8. That during the day on which the body of the decedent was found, the decedent was seen by at least two tenants of the apartment house in which he worked performing his usual duties."

The referee made no findings whatever relating to the resignation or discharge of deceased, although that is one of the important factors in this case. Nor did he make any findings relative to deceased's activities on the day of his death except that he was seen by two tenants (the evidence shows only one), performing his usual duties; and he said nothing about deceased meeting Shapiro on the morning of the 25th.

The board, in its opinion, reviewed the evidence in much greater detail, but made no additional findings of fact. In *Garrahan v. Glen Alden Coal Co.,* 135 Pa. Superior Ct. 307, 5 A. 2d 437, we were compelled to remit the record for more specific findings of fact due to the confusion therein, and pointed out that the failure of the compensation authorities adequately to find the facts sometimes makes it impossible for this court to perform the duties with which it is charged under the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §1 et seq. " 'The referee should make his findings of fact so comprehensive and explicit as to disclose the full story of the accident' ": *Flucker v. Carnegie Steel Co.,* 263 Pa. 113, at page 117, 106 A. 192, at page 193. See, also, *Gurski v. Susquehanna Coal Co.,* 262 Pa. 1, 104 A. 801. If it is the intention of the board in any case to amplify the report of the referee, the former should make distinct findings so that the reviewing court may know with reasonable certainty upon

what facts the ultimate conclusions rest. The reports of the referee and board should show clearly and unmistakenly all the controlling facts, and there should be findings based on subordinate underlying findings to support the conclusion of law and fact. See *Gallagher v. Delaware, Lackawanna & Western R. R. Co.*, 72 Pa. Superior Ct. 124, 127, 128. We have not remitted the record in the case at bar for more specific findings only because of our conviction that, in any view of the evidence, it does not support the conclusion that the deceased was an employee of Shapiro on March 25th. By so doing we do not mean to weaken the application of the principles just stated, but rather to emphasize the necessity for close observance of them.

A prerequisite to recovery of compensation by claimant was a showing that deceased was an employee *(Carville v. A. F. Bornot & Co.*, 288 Pa. 104, 135 A. 652), and bore to the one sought to be charged the relation of master and servant *(Sgattone v. Mulholland & Gotwals, Inc. et al.*, 290 Pa. 341, 138 A. 855). The relation of employer and employee, as contemplated by the Workmen's Compensation Act of 1915, supra, arises only where there is a contract of hiring, express or implied *(Lehman v. Commissioners of Northumberland County*, 87 Pa. Superior Ct. 440) ; and the burden of proving that deceased was an employee of Shapiro was upon claimant *(Logue v. Gallagher et al.*, 124 Pa. Superior Ct. 328, 332, 188 A. 395).

The testimony of Shapiro, by which claimant was bound, established the fact that deceased had been discharged or had resigned. Consequently, it became necessary for claimant to prove a new contract of hiring, express or implied, and, in our opinion, that is where her case failed. There is no evidence whatever that would support a finding of an express contract. "A contract implied in fact, or an implied contract in the proper sense, arises when the intention of the parties is not expressed, but an agreement in fact creating an

obligation, is implied or presumed from their acts; or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual interest [intent] to contract: 13 C. J. 241": *Montgomery's Estate,* 299 Pa. 452, at page 457, 149 A. 705, at page 707. Whether, from the facts and circumstances in the case at bar, an implied contract of hiring can be derived is a question of law. *Reitmyer v. Coxe Bros. & Co. Inc.,* 264 Pa. 372, 376, 107 A. 739.

What are the facts and circumstances upon which claimant relies to show that deceased was rehired on March 25th? Those upon which the referee based his conclusions have been stated previously. To them we add the additional fact mentioned in the board's opinion, although, as we have said, it made no additional findings which it was its duty to do if the evidence warranted and was believed *(Garrahan v. Glen Alden Coal Co.,* supra), that deceased was seen by Shapiro passing by in the yard or driveway, wearing the clothes in which he usually worked, but no conversation took place between them. It is obvious that deceased was not performing services at the time Shapiro saw him, and those who did see him at work did not have any authority to act for Shapiro, and by acquiescing in the rendition of services by deceased to create an implied contract of hire. Certainly Shapiro was not affected by the tenant's knowledge of deceased's activities, and it was not shown that Kirkhoff could hire or discharge, or that he knew of deceased's resignation or discharge on the previous day. Neither Shapiro nor any one authorized to act for him in such matters recognized deceased as an employee of Shapiro on March 25th. Shapiro cannot be said to have acquiesced in the performance of services by deceased in the absence of evidence that he knew of them. We are of the opinion that, taking all the evidence in the case in the light most favorable to claimant, it does not establish the relationship of employer

558

and employee between Shapiro and deceased at the time of the latter's death, and hence the award cannot stand.

Judgment is reversed, and judgment is here entered for defendants.