## Behanna *v.* Meyers et al., Appellants.

Argued September 28, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*H. E. McCamey*, with him *William W. Matson* and *Dickie, Robinson & McCamey*, for appellants.

*Louis Vaira*, for appellee.

OPINION BY BALDRIGE, P. J., November 19, 1945:

The question involved in this appeal is whether Howard J. Behanna, the claimant, is barred from receiving compensation for failure to file his claim within the statutory period.

Behanna on May 9, 1944, filed a claim petition alleging that on August 21, 1942, he sustained an accidental injury while cranking an engine in the course of his employment and as a result he lost the sight of his

right eye and suffered an impairment of the vision in his left eye. Defendants filed an answer averring that the petition was not filed within one year after the accident as required by section 315 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended 77 PS §602, and that the alleged disability was due to diseased lenses of both eyes.

It appeared in the evidence offered by the claimant that the day after the accident his right eye became clouded and by evening he had no vision in that eye. On August 24, he consulted Dr. Lee, a chiropractor who expressed the opinion that Behanna had two or three displaced vertebra in his neck. The claimant reported the accident to Raymond Meyers, his employer, on August 29, 1942, and informed him of the substance of Dr. Lee's diagnosis. Meyers said he would make out a report to the insurance carrier and "that would take care of it" for Behanna. Following the suggestion of Dr. Lee the claimant on September 21, 1942, consulted Dr. Zeller, an eye specialist. He advised claimant that he had a detached retina which would require surgical treatment and referred him to Dr. C. L. Reed in Pittsburgh, another eye specialist. About this time Behanna informed Meyers that he had lost the sight of his right eye and would have to undergo an operation and inquired if he had made out a report. Meyers replied that he had been too busy, but that "they would send it in and they would take care of me [Behanna]. Q. They would take care of you in what way? A. My eye and pay compensation for my eye." Dr. Reed on October 1, 1942, determined that the right eye was such that an operation would be useless. On October 22, 1942, Behanna went to Meyers' home to discuss with him his injury but Meyers was not there. Shortly thereafter he informed Meyers by telephone the result of his consultation with Dr. Reed and asked whether a report had been sent to the insurance carrier. Meyers replied again that he had been too busy and had not sent it, and advised the claim-

ant to see Mr. Frye, the insurance agent from whom he had purchased the liability policy, and that he would make out the report for him. On October 24, 1942, Behanna saw Frye, gave him the information about the accident, but he heard nothing more of his claim until the latter part of January 1943, when he received a letter (which is not of record) from the insurer requesting him to come to its office in Pittsburgh. A day or two later he visited the insurer's office and saw Mr. Dunn, an adjuster. He gave Dunn a complete history of his case, which was then reduced to writing and signed by the claimant. Dunn informed him that he should see Dr. Lynn, another eye specialist apparently employed by the insurer, and report back to him what was said. Dr. Lynn made an examination the same day, but the record does not disclose what he told the claimant, if anything. Behanna then returned to the insurance carrier's office to report to Dunn, but was informed by an office employe that he was out but she would give the message to him. On April 26, 1943, claimant entered a hospital in Pittsburgh where Dr. Reed performed two operations on the left eye to reattach the retina. He remained there until July 7, 1943. In September 1943, as he had not heard from the insurer relative to his claim, he went again to the office in Pittsburgh where he was interviewed by Mr. Smith, who after looking at the files stated: "It's too late. There is nothing we can do. The time is up." Claimant on January 3, 1944, re-entered the hospital where Dr. Reed performed another operation on the left eye, and he remained there until March 5, 1944. He never received a report from the insurer relative to the examination made by Dr. Lynn.

Meyers admitted substantially all the evidence the claimant produced concerning the notice of the accident, the visit to his home, the telephone message to see Mr. Frye, but later rather equivocally denied the statements imputed to him relative to the payment of compensation, by stating that he informed claimant "he

would receive compensation if he could show claim." We might add parenthetically that although Mr. Dunn had prepared the answer to the claim petition and was present in the room during the hearing before the referee, he did not take the stand to contradict any of claimant's testimony.

The referee found as a fact that the claimant had sustained an accidental injury as alleged, but that he had not been misled either by his employer or the insurance carrier into delaying the filing of his claim petition until more than one year after the date of the accident. He concluded, therefore, as a matter of law, that the claim was barred under section 315, supra, and dismissed the petition. The board affirmed his findings of fact and conclusions of law.

An appeal was taken to the court below, which entered an order remitting the case to the compensation authorities for further inquiry and more explicit findings, stating that "additional testimony should be taken to disclose the circumstances of the examination of the claimant by Dr. Linn, the physician of the insurance carrier, in the early part of February, 1943, and to bring to light the conduct of the insurance carrier subsequent thereto."

The defendants have appealed from that order and requested us to dispose of this case on its merits, contending that as the court below neither reversed the findings of fact nor ordered more explicit findings to enable it to pass upon the legal questions involved, it exceeded its power under §427 of our Workmen's Compensation Act as amended by the Act of May 27, 1943, P. L. 691 §1, 77 PS §877pp. Section 427 provides: "Any court before whom an appeal is pending from any action of the board may remit the record to the board for more specific findings of fact, if the findings of the board or referee are not, in its opinion, sufficient to enable it to decide the question of law raised by the appeal."

The appellee has filed a motion to quash the appeal on the ground that the order is interlocutory as the

court was acting within its power to remit the case to the board. He contends defendants' declarations and conduct induced him to postpone the filing of a formal claim petition and that they are therefore estopped from asserting the bar of section 315, supra. In *Meyers v. Lehigh Valley Transportation Co. et al.*, 138 Pa. Superior Ct. 569, 10 A. 2d 879, we stated that where a claimant at the request of the insurer submits to a physical examination by the insurer's physician, the insurer is under a duty to seasonably notify him of its attitude toward his claim, and if it failed to do so until after the statutory period for filing a claim petition had run, it would be estopped from asserting that it was too late.

In *Mackanitz v. P. & W. V. Ry. Co.*, 157 Pa. Superior Ct. 359, 43 A. 2d 586, we held that while ordinarily it is mandatory under section 315 to file a claim petition within the statutory period of time, and the courts may not extend this period of repose simply to aid what appears to be a meritorious claim, but the statute may be tolled by the declarations and conduct of those who invoked its protection. At page 364 we said: "Where a defendant's representatives so deport themselves in their dealings with a claimant as to mislead or deceive him, whether innocently or with fraudulent purpose, and induce him to postpone the filing of his petition until the period of limitation has expired, the defense of inordinate delay is not available, as a defendant cannot be permitted to benefit from a neglect for which he is himself primarily responsible."

We recognize that it is the prerogative of the compensation authorities to pass upon the factual issues offered in support of, and against, an alleged estoppel and to make specific findings of fact thereon, but on the other hand, if the facts are clear and explicit, whether or not they are sufficient to constitute an estoppel is a matter of law: *Meyers v. Lehigh Valley Transportation Co. et al.*, supra, p. 573.

The burden was upon the claimant, who alleged estoppel, to prove by clear and persuasive evidence that

he was lulled into a sense of security or misled by the defendants' conduct: *Mackanitz v. P. & W. V. Ry. Co.,* supra, p. 365. The record is devoid of any basic or primary findings by the compensation authorities relating to the claimant's being misled which is the vital issue upon which the ultimate findings and conclusions of law are based. "The reports of the referee and board should show clearly and unmistakenly all the controlling facts, and there should be findings based on subordinate underlying findings to support the conclusion of law and fact." *James v. Shapiro et al.,* 135 Pa. Superior Ct. 550, 556, 5 A. 2d 815.

The court below, after considering the chain of events here disclosed, was obviously of the opinion that the board had not fully considered the principles enunciated by us in the *Meyers* case, supra. We are in accord with that view. An examination of this record convinces us that the essential question in issue is quite similar to the one in the *Meyers* case. We explicitly ruled there that the conduct on the part of the insurer, in the absence of contradicting or qualifying circumstances, established prima facie that the claimant was misled.

Our conclusion, after giving the issues raised by appellants our careful consideration, is that the court was justified in remitting the record for more specific findings of fact to enable it ultimately to pass upon the legal question of whether the defendants are estopped from asserting the bar of §315. It should be understood that our purpose is to develop all the pertinent facts and that we are not endeavoring to interfere with the compensation authorities' powers of finding facts; that is exclusively their function.

The appellants seem apprehensive that an affirmance of the lower court's action would mean that a defendant in a compensation case may not inquire as to the extent of claimant's disability without assuming the burden of telling him that in the defendant's opinion he does not have a compensable claim. There is no ground for that

fear. The proof before us is not confined to such simple facts.

The order of the court below is interlocutory and not appealable. The appeal is therefore quashed at appellants' costs.