## Katz Petition

Before Ellenbogen and Thompson, JJ.

*Harry Eisenfeld*, for Katz Food Products Company.

*T. McKeen Chidsey*, Attorney General; *M. Louise Rutherford*, Deputy Attorney General; *George L. Reed* and *Charles M. Christler*, for Pennsylvania Labor Relations Board.

THOMPSON, J., November 13, 1947.—We have before us a petition of defendants in the above-entitled proceeding for a review of a final order of the Pennsylvania Labor Relations Board and also a petition on the part of the board for enforcement of its final order. Subsequent to the filing of these two papers a third

petition was filed on behalf of defendants praying that this court order that additional evidence be taken before the Pennsylvania Labor Relations Board as to whether the Katz Food Products Company "was, had been, and is engaged in interstate commerce within the meaning of the National Labor Relations Act as amended, and that such additional evidence be made a part of the transcript of this case".

A rule to show cause was granted by this court directed to the Pennsylvania Labor Relations Board and the Pickle and Canning Workers Union, Local No. 573 or its successor affiliated with the American Federation of Labor to show cause why the prayer of petitioners should not be granted.

We will deal first with the rule to show cause why the board should not take further testimony to prove that the Katz Food Products Company is engaged in interstate commerce within the meaning of the National Labor Relations Act.

1. Is the Katz Food Products Company entitled to have this proceeding referred back to the board in order that testimony may be produced tending to show that it is engaged in interstate commerce?

The term "interstate commerce" is not used in either the complaint filed against these defendants, nor in any of the proceedings before the board, nor in the petition by defendants for a judicial review nor in the petition of the Labor Relations Board for enforcement of its order. It is conceded by defendants in the brief of their counsel that no testimony was produced before the board in any way suggesting that defendants were engaged in interstate commerce.

Counsel for defendants argue in their brief that they are raising a jurisdictional question, and that they are entitled to raise such a question at any time during the proceedings.

There was argued before us on the same day that this case was argued two other labor relation cases involving A. Mamaux & Son, a partnership, and in an

opinion filed this day we are holding that the principle of law regarding jurisdiction, which these defendants urge, is correct, but we think there must not only be some basis on the record for the assertion of jurisdictional question of that character, but also that defendants in petitioning for the taking of additional testimony should set out what they intend to prove so that the courts may be able to determine whether their jurisdictional claim has any substantial basis.

In the petition to produce additional evidence, which we have referred to above and in connection with which a rule to show cause was granted, it is averred in paragraph 13 that defendant "is now engaged in interstate commerce within the meaning of the National Labor Relations Act of the United States of America". In paragraphs 14 and 15 it is stated that defendant company is subject to the jurisdiction of the National Labor Relations Board and is not subject to the jurisdiction of the Pennsylvania Labor Relations Board. These averments are merely conclusions.

The rule to show cause will be discharged because no facts are averred which could take the case out of the jurisdiction of the Pennsylvania Labor Relations Board, and for the further reason that the record when it reached this court does not contain any claim on the part of defendants or finding of fact by the board, or any language whatever that would indicate that interstate commerce was involved in this case.

Quite a different situation presented itself in the Mamaux case to which we have referred. There the board had found as facts that defendants were engaged in interstate commerce and had itself averred that fact in its petition for enforcement of its order.

Coming then to the grounds on which a review is sought, the exceptions, which are 15 in number, may be treated, we think, under three questions.

1. Was the order made by the board improper in view of the death of Morris Katz, one of the partners, on February 13, 1947?

We understand that the death of Morris Katz, one of the partners, took place after the acts, which the board has held to constitute unfair labor relations, occurred and that the complaint was filed against David Katz and Morris Katz, trading and doing business as the Katz Food Products Company, and that Fannie Katz, administratrix of the estate of Morris Katz, deceased, was substituted as a party of record to represent the interests of decedent.

Defendants contend that the original partnership, which committed the abuses charged, terminated with the death of Morris Katz and that, therefore, no remedy lies against the surviving partners.

The Pennsylvania Labor Relations Board takes the position that "it is the employing industry that is sought to be regulated and brought within the corrective and remedial provisions of the Act", and that the purpose of the Pennsylvania Labor Relations Act is "to implement a public social or economic policy not primarily concerned with private rights, and through remedies not only unknown to the common law but often in derogation of it".

Reference is made to National Labor Relations Board v. Colten, 105 F. (2d) 179, 183 (1939) where it is stated:

"It is the employing industry that *is sought to be regulated and brought within the corrective and remedial provisions of the Act in the interest of industrial peace.* The term 'co-partners' may not then be regarded as more than a term of description, or as denoting a legal entity which alone is subject to the command of the order. *It needs no demonstration that the strife which is sought to be averted is no less an object of legislative solicitude when contract, death, or operation of law brings about change of ownership in the employing agency. Moreover, a cease and desist order is of the nature of an injunction, and its affirmative provisions analogous to those of one that is mandatory. It*

*would be an implausible contention that the death of a partner subject to restraint relieved survivors of its burdens."* (Italics supplied.)

To the same effect see National Labor Relations Board v. Weirton Steel Co., 135 F. (2d) 494 (1943) (Third Circuit Court of Appeals), where the corporation had been voluntarily dissolved and had ceased to exist for all purposes except the prosecution and defense of suits and actions begun prior thereto. It was urged that the decree should not run against the successors and assigns of the dissolved employer corporation. In the opinion by Maris, J., at page 498, it was said:

"As to the first point we think that *under the Delaware statute the corporate entity was preserved for the purposes of the proceeding before the Board and that this enforcement proceeding is but a continuation of that one within the contemplation of the statute.* With regard to the second point *we see good reason under the circumstances why the order should, as is customary, run against the Company's successors and assigns. It is not suggested that the property has been liquidated or that the business does not continue as an operating unit. Under these conditions the Board may well find that it will effectuate the policies of the Act for the new owners of a continuing manufacturing establishment to rectify the unfair labor practices of former owners of the establishment."* (Italics supplied.)

We are in accord with the board's view of this question.

2. Were the employe witnesses, upon whose testimony the Labor Relations Board to some extent relies, disqualified from testifying by reason of the Evidence Act of 1887?

The grievance, which gave rise to the complaint on behalf of the board, mainly took place while Morris Katz and David Katz, copartners and brothers, were doing business under the name of Katz Food Products Company. On February 13, 1947, Morris Katz died

and this same business was thereafter conducted by David Katz and Fannie Katz, administratrix of the estate of Morris Katz, Fannie Katz being the widow of Morris Katz.

Defendants contend that since one of the copartners died, witnesses who were employes of the partnership are incompetent under the Evidence Act to testify to transactions which took place regarding the affairs of the partnership with one of the partners, who is now deceased.

What we said regarding the previous question is also to a certain extent applicable to this question.

This is not an action in which the parties are decedent's estate on one side and certain former employes of decedent on the other side. This is a case where the Commonwealth of Pennsylvania, acting through one of its agencies, the State Labor Relations Board, is one of the parties and the representatives of the former partnership and who are still conducting the business of the partnership, are the other parties.

There is a public interest, which is represented by the Pennsylvania Labor Relations Board and we think this public interest is such that the Evidence Act of May 23, 1887, P. L. 158, insofar as it tends to disqualify a witness, cannot apply. The Labor Relations Board in its final order has made the following statement:

"We are also of the opinion that Section 5 (e) of the Act of May 23, 1887, P. L. 158, 28 P. S., section 322, which prohibits a surviving party or other person in interest to be a competent witness to any matter occurring before death which is adverse to the interest of the deceased party, has no application to proceedings before an administrative agency such as the Pennsylvania Labor Relations Board. The Board is not a 'tribunal' within the classification given by the Supreme Court in Crosetti's Estate, 211 Pa. 490. It is doubtful whether the Act of May 23, 1887 applies to a

workmen's compensation case: Logue v. Gallagher et al., 124 Pa. Superior 328, 334; Stevens v. Taylor, 138 Pa. Superior 335, even though in such a proceeding the rights of claimants to money judgments are being passed upon."

In the latter case of Stevens v. Taylor et al., the court said on page 338:

"Moreover, rules of evidence are not applied with the same strictness in compensation cases as in jury trials: Johnston v. Payne-Yost Const. Co. et al., 292 Pa. 509, 141 A. 481. The claimant's right of action is distinct from that her husband would have had, if he had survived. In Logue v. Gallagher et al., 124 Pa. Superior Ct. 328, 334, 188 A. 395, we expressed a doubt as to whether the Act of May 23, 1887, P. L. 158, had any application in a workmen's compensation case. We think the evidence objected to was admissible."

If a valid doubt exists as to the applicability of the Act of 1887 to a workmen's compensation case, it would seem to us that the reason for admitting the testimony is even stronger in a labor relations case. We have, therefore, reached the conclusion that the board was right in admitting and considering such evidence.

3. Were the findings of fact by the board "supported by substantial and legally credible evidence"?

Defendant partnership complains that evidence introduced on its behalf was ignored by the board and not given adequate consideration.

The credibility of witnesses is for the Labor Relations Board and our function on this point is extremely narrow and consists only in determining whether the board had substantial and legally competent evidence on which to rely.

An examination of the record, it seems to us, leaves scarcely any doubt on this point. The record discloses that the five girls named as having been discharged by the partnership against whom complaint has been made were summoned into the office of the partner-

ship and in the presence of the deceased partner, Morris Katz, and the surviving partner, David Katz, were interrogated as to whether they belonged to a labor union.

The testimony on behalf of the board was to the effect that when they admitted this charge, the surviving partner, David Katz, said: "Fire them all" and that decedent, Morris Katz, who, it appears, according to defendants' testimony, was the member who employed these persons, concurred and said: "You are all fired." It was also stated by a number of witnesses that the surviving partner, David Katz, said: "Get the hell out of here", and that they all interpreted this to mean that they were fired.

Typical was the testimony of Betty Hooks:

"Q. On Friday, January 31st, the day that your coworkers were fired, could you tell us exactly what happened?

"A. Well, Florence was in the office at first when we came back from lunch. . . .

The Examiner: "Florence Riley?

"A. Florence Bayerline, and then—well, Morris and Dave were in the office and they called Florence in first and talked to her. Then they called Mary Devlin in and they were in arguing—of course, we were working—and finally I heard Dave say to Mary, 'Who all joined the union?' 'Well,' Mary says, 'why don't you call the girls in and ask them?' So Morris and Dave called us in.

"Q. Into the office?

"A. Yes.

The Examiner: "In a group?

"A. Yes. We went in and they asked each one of the girls individually who joined the union, and when Morris came to me he said, 'Betty, did you join the union?' I said, 'Yes, Morris, I did.' Dave hollered, 'Fire her. Fire all the girls who joined the union.'

Then Morris jumped over and said, 'You are all fired; get out. Get the hell out.' Then we ran out."

There was testimony that threats of violence had been made against representatives of the labor union. On the part of defendant partnership the testimony was to the effect that while all the girls were called in to the office that Betty Hooks was first asked whether she was a member of the union and when she replied in the affirmative, she was told that she was discharged, and that the other girls then said: "Well, fire us all," and all walked out.

The contention is made that Betty Hooks was discharged not because she was a member of the union, but because she was inefficient and incompetent. There can be little doubt from a reading of the evidence, however, that defendant partnership had called the girls together for the purpose of determining whether they had joined a union.

We think that we would not be justified in overruling the judgment of the Labor Relations Board since they were the fact-finding body and since in our opinion there was substantial and legally credible evidence upon which they reached their conclusion.

## Order of court

And now, November 13, 1947, the petition on the part of defendants to obtain a review of the final order of the Pennsylvania Labor Relations Board filed in this court on November 13, 1947, having been heard and considered and argued by counsel, the relief sought therein is now denied, and the petition of the Pennsylvania Labor Relations Board for enforcement of its final order in the above-entitled proceeding is approved, and it is ordered and decreed that David Katz and Fannie Katz, administratrix of the estate of Morris Katz, deceased, trading and doing business as Katz Food Products Company, forthwith comply with said final order of the board dated September 15, 1947.