Margaret K. Shea *vs.* Gamco, Incorporated.
Margaret K. Shea *vs.* Gamco, Incorporated.

JULY 30, 1953.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.  These two original petitions were brought by an employee for compensation and for extended medical fees respectively under the workmen's compensation act, general laws 1938, chapter 300.  They were heard together in the superior court and decrees were entered denying and dismissing both petitions on the ground that they were filed too late.  From such decrees the employee has duly prosecuted appeals to this court.

The petitioner was an office employee of respondent and

while leaving her place of employment on June 13, 1947 she tripped and fell on a platform leading from the building to the street. She was injured and remained out of work for five weeks during which time she received full wages. These were paid not as workmen's compensation but in accordance with respondent's general policy to pay all office employees for five weeks when absent because of illness. Thereafter she returned to her employment and continued to work until November 14, 1947 when she was discharged because of inability to perform her duties.

According to petitioner's testimony her incapacity was causally related to her accident and injury, but she gave no formal notice of the accident to her employer as she believed the injury was not compensable. The employer, however, knew of the accident through other employees and from the payments of wages at her home. On March 13, 1949, pursuant to the advice of a friend, she visited the office of the director of labor. A clerk in that office gave her a printed form of a petition for compensation and told her in substance that she should have filed her petition previously; that it must be completed and filed within two years from the date of injury; and that since she had not given formal notice of the accident to her employer it would be advisable to talk with respondent's insurer to find out whether an agreement was possible without filing the petition.

Accordingly petitioner visited the insurer's office where an adjuster accepted from her a detailed report of the accident and claim for compensation. He also took a statement concerning the accident and injury from petitioner's sister. Subsequently, at insurer's request petitioner submitted to several medical examinations by different doctors selected by the insurer. Periodically between March 13 and June 13, 1949, when the period of limitation would expire, she called personally or by telephone at the insurer's office to obtain a definite answer as to the settlement of her claim. While the insurer at no time affirmatively represented that

her claim would be adjusted by agreement without filing a petition, it never disclaimed liability for lack of notice of the accident or otherwise. Nor did it challenge the nature, extent and compensability of petitioner's injury. On the contrary it continued to request and have medical examinations by its own doctors and to act as if her case was being considered for adjustment.

The petitioner testified that she talked eight or ten times with Willis M. Whitney and five or six times with Harold L. Black, the adjusters of the insurer who handled her claim, in attempting to obtain a definite decision; that even as late as July 5, 1949, when the insurer knew the statute of limitation had expired, she received a letter from Mr. Black directing her to keep an appointment with Dr. Hannibal Hamlin for an examination; and that she submitted to such examination. She also testified that Mr. Black promised to look into the matter further and tell her of his decision on his return from vacation; that when he did not get in touch with her she telephoned to him and for the first time he explained that "Because of the length of time I took to file the claim, he wasn't sure just how to settle it and he would leave it up to the board, to the Workmen's Compensation Board, to settle."

The material portions of this testimony appear to be undenied. Mr. Black, the senior adjuster who had supervision of the case, died a week or two before trial, and Mr. Whitney, who had worked on the case under Mr. Black and volunteered little information, admitted that petitioner had called at the office at least twice. And he did not specifically deny the petitioner's other testimony involving the insurer's statements or directions given to her.

The instant petitions were filed on September 28, 1949 following Mr. Black's indication that he would leave settlement to the workmen's compensation board, evidently meaning the director of labor. Thereupon respondent resisted the petitions and relied not only on the failure of petitioner to give formal notice of the accident to her em-

ployer, but also on the statute of limitation as to the filing of the petition.

The trial justice in his rescript found as a fact that the employer had actual knowledge of the accident and injury sufficient to satisfy the requirements of the statute as to notice. He also held that the period of limitation in the statute begins to run from the date of the compensable injury when the accident and injury are not contemporaneous; that the injury here was incapacitating for five weeks immediately following the accident according to petitioner's own testimony; that the petition had not been filed within two years of such incapacitating injury as required by the statute; and that there was no evidence that the insurer or any of its representatives had "acted to cause Mrs. Shea to delay filing a petition for compensation." He therefore denied and dismissed the petition for compensation and also the petition for extended medical fees, which depended thereon, on the ground that they were not filed within the time specified in the statute.

In support of her reasons of appeal the petitioner contends, first, that respondent is estopped as a matter of law from asserting the statute of limitation as a defense because by its conduct in the circumstances it "failed to disclaim liability within the statutory period" and thus delayed the filing of her petition; and secondly, that if respondent is not estopped the two-year period under the statute would not begin to run until November 1947 when petitioner was first incapacitated by injury from earning full wages as she interprets the statute.

In our judgment the trial justice was not in error so far as his interpretation of the statute of limitation is concerned. G. L. 1938, chap. 300, art. III, §17. His conclusion is in accord with *Rosa* v. *George A. Fuller Co.*, 74 R. I. 215, and *Larkin* v. *George A. Fuller Co.*, 76 R. I. 395. In view of his finding on evidence that petitioner was plainly incapacitated from earning full wages for five weeks continuously and immediately following her accident, he did not

err as to the date when the statute as thus interpreted should be applied.

The principal argument of petitioner, however, seeks to invoke an estoppel of the insurer from claiming the benefit of the statute of limitation by virtue of the latter's course of conduct and silence. She contends substantially that the insurer's action in accepting her claim and exercising its statutory right to have her examined by its own doctors amounted to the undertaking of a duty to disclaim liability in a reasonable time, which here would be before the statute of limitation expired. According to her argument, the insurer's actions and its continued postponing of a definite disclaimer amounted, in the circumstances of record, to a course of affirmative conduct which she relied on to her disadvantage and therefore in equity and fair dealing respondent should be estopped from claiming the statute of limitation as a defense.

In our opinion the trial justice erred in rejecting or overlooking the petitioner's contention as to an estoppel *in pais*. It should be noted that the instant case is brought under the workmen's compensation act, which is remedial legislation. Its terms require a liberal construction to achieve the salutary purposes thereof and though of statutory origin it follows the course of equity in certain aspects of its proceedings. We have held generally that both employer and employee are bound to cooperate and deal fairly with each other in order that both may have the benefit of the express provisions of the act.

Ordinarily in other cases an estoppel *in pais* does not arise unless there is some affirmative representation of a material fact or a course of conduct amounting thereto upon which the party invoking estoppel has reasonably relied to his disadvantage. *Kenyon v. United Electric Rys.,* 51 R. I. 90, 94. But silence on the part of one party in appropriate circumstances may be the basis for applying the doctrine of estoppel. See *Personal Finance Co. of Providence v. Henley-Kimball Co.,* 61 R. I. 402, 411. However,

an estoppel by silence postulates the existence of a duty not to remain silent where the circumstances require one to speak lest such silence would reasonably mislead another to rely thereon to his damage.

It is true that under the act the filing of a petition within the statutory requirement is necessary since it operates as part of the right and not merely of the remedy. *Menna* v. *Mathewson*, 48 R. I. 310. Likewise the statute imposes no original duty on the respondent or insurer to aid an employee in asserting his rights under the act. On the other hand it gives the employer or its insurer no right to have medical examinations unless the employee is considered to have the status of a claimant for compensation. While the insurer in the first instance had no duty to entertain petitioner's claim, nevertheless when it accepted her report of the accident and claim and followed it with requests for medical examinations of her by its own doctors, it undertook a duty to deal fairly with petitioner under the act and not to permit its conduct or silence to mislead her to her disadvantage. Certainly the record shows that petitioner expected to receive some definite answer from the insurer. There is no other explanation of her persistent visits and telephone calls to its adjusters. The latter also must have known from her periodic calls that she believed, from their conduct and the repeated requests for examinations, that she was to receive at least such an answer and was relying thereon. But the insurer did nothing to correct that obvious impression before the statute expired.

The insurer likewise knew that the statute of limitation would expire on June 13, 1949. And yet for several months prior thereto it deliberately pursued a course of affirmative conduct whereby it was obtaining for its own purposes several medical examinations of petitioner by its doctors, while all the time it kept postponing the giving to her of any notice of either a disclaimer of liability or a willingness to settle her claim by preliminary agreement. Even after the statute was known to have expired, the insurer still

demanded and obtained a further medical examination, to which it would not be entitled under any view if it were then acting consistently with an original intent to claim, as it later argued, that there had been no formal notice of the accident; that the statute of limitation had expired; and that its agents never by conduct caused her to delay filing her petition.

The conduct of insurer after the statute had expired, including the final answer of its adjuster Black, throws corroborative light on its prior conduct, knowledge and intention. Keeping in mind that under the workmen's compensation act the great majority of cases are disposed of by preliminary agreement of the parties without the intervention of counsel or the necessity of filing a petition for adjudication, we think that the evidence showed a continuous course of affirmative conduct and silence by which the insurer undertook a duty to tell petitioner before the period of limitation expired whether her claim would be settled by agreement or whether she must file her petition for its adjudication, and that in the circumstances petitioner could reasonably rely and did rely thereon to her disadvantage. There can be little doubt on the undisputed evidence that petitioner would have filed her petition before June 13, 1949 if the insurer in April or May had given her the answer that it postponed giving until August 1949, after it knew the statute had expired.

While the instant case is novel in this jurisdiction, the existence of such a duty as here imposed upon the insurer in the particular circumstances of record, which are not disputed, has been recognized elsewhere. See *Meyers* v. *Lehigh Valley Transportation Co.*, 138 Pa. Super. 569; *Behanna* v. *Meyers*, 158 Pa. Super. 208.

In the case of Margaret K. Shea v. Gamco, Incorporated, Equity No. 2155, the petitioner's appeal is sustained in part, the decree appealed from is reversed as to findings numbered 8, 9, 14 and 15, otherwise it is affirmed, and the cause is remanded to the superior court for entry of a decree

in accordance with this opinion and for further proceedings.

In the case of Margaret K. Shea v. Gamco, Incorporated, Equity No. 2156, the petitioner's appeal is sustained in part, the decree appealed from is reversed as to findings numbered 3 and 4, and the cause is remanded to the superior court for further proceedings.

*Edward W. Day, Charles F. Cottam,* for petitioner.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Thomas J. Hogan,* for respondent.