Herman GROSS

v.

Helen G. GLAZIER et al.

83–241–Appeal.

Supreme Court of Rhode Island.

July 9, 1985.

Reargument Denied Aug. 2, 1985.

Michael P. DeFanti/Isadore Paisner (Hinckley & Allen), Providence, for plaintiff.

Julius C. Michaelson (Abedon Michaelson Stanzler & Biener), Providence, for Helen Glazier.

Mark S. Mandell (Mandell Goodman & Schwartz), Providence, for Irving Gross et al.

OPINION

MURRAY, Justice.

This is an appeal by the three defendant siblings jointly and by one of the defendants, Helen G. Glazier, in her individual capacity from the trial justice's judgment for the plaintiff, Herman Gross. We affirm the judgment of the Superior Court, and, therefore, the appeal of the three defendants is denied and dismissed.

This is a family dispute involving the four children of Rose and Frank Gross. Herman Gross, plaintiff, is the oldest son. Herman and Irving Gross's principal business is Fairhope Fabrics in Fall River, Massachusetts. The two sisters, Helen Glazier and Beatrice Newman, live out of town and have generally left all family business matters up to the two brothers, Herman and Irving Gross. Newell Realty Co. (Newell) was formed in 1945 for the purpose of taking title to land upon which the father, Frank, had previously operated a junk business. Newell issued 100 shares of common stock: 20 shares to each of the children and 20 shares to Frank, the father. On October 8, 1945, Frank transferred his 20 shares to Herman, his oldest son. From 1945 to the present, the stock ownership, according to Newell's records, has been 40 shares in Herman's name, and 20 shares in the name of each defendant. In the early

1950s, Herman purchased land personally. In 1960, he stated to Irving that he was willing to convey this land to Newell in return for 5 shares of stock from each of his three siblings. Irving originally accepted the offer but then changed his mind. When the sisters convinced Irving to acquiesce, Irving's attorney arranged for a deed of the properties to Newell. Next, Herman took over the control of the company although no change of ownership was made on the books. In 1969 Newell entered into an arrangement with American Toy Company for the construction and leasing of a building.

The plaintiff contends that, in 1979, Irving challenged Herman's status as a majority stockholder: "For the first time, the other siblings informed Herman that the fifteen shares that they owed him in accordance with the 1960 transaction were to be satisfied out of the original twenty shares transferred to Herman by his father in 1945." The siblings maintained that those shares had been given to Herman in an *oral trust* for their father and, upon his death, to the siblings. In satisfaction of their obligation to transfer fifteen shares (five each), they stated that they had released their trust claims to those shares. Herman immediately sued his three siblings on July 28, 1980, to compel each of them to convey five shares to him.

At trial, Herman testified as related above. Irving testified that the 1945 transaction was a trust and an attorney corroborated that version of the story. The sisters sided with Irving. The defendants invoked the statute of limitations and attacked Herman's credibility by introducing evidence that Herman had informed both a court and an accountant that the books of Newell reflected a stock distribution of forty shares to Herman (as opposed to fifty-five) and twenty each to the three siblings (as opposed to fifteen each).

The trial justice accepted Herman's testimony as the most reliable. He held that defendants had not met their burden of proving an oral trust by clear and convincing evidence, and he concluded that, as regards the statute-of-limitations defense, defendants were estopped from asserting this defense because, by their conduct, they had led Herman to believe that they acquiesced in his belief that he had majority control and ownership of the corporation. As stated above, plaintiff sued immediately upon the challenge of his majority control.

The critical and decisive issue in this controversy concerns the trial justice's ruling that the three defendants were estopped from invoking as a defense Herman's failure to initiate this litigation until almost twenty years had elapsed between defendants' respective promises to give Herman five shares of their twenty-share portions of Newell stock and the commencement of this suit in July 1980. Initially, we once again emphasize that a trial justice in a jury-waived case has the exclusive task of drawing inferences from the evidence presented and that the factual findings of such a justice will be accepted by this court as long as the inferences are reasonable and logical and flow from the established facts. *Rhode Island Turnpike & Bridge Authority v. Bethlehem Steel Corp.,* — R.I. —, —, 446 A.2d 752, 756 (1982). Credibility unquestionably played an important part in the proceedings before the trial justice, and we see no reason whatsoever for disturbing his factual findings.

The defendants, in seeking a dismissal of plaintiff's suits on the grounds of the bar of the statute of limitations and/or laches, rely on *Wolf v. S.H. Wintman Co.,* 92 R.I. 470, 473, 169 A.2d 903, 905 (1961), and *Caianiello v. Shatkin,* 78 R.I. 471, 476–77, 82 A.2d 826, 829 (1951), where the principle of equitable estoppel was recognized in actions at law to prevent the imposition of the bar of the statute of limitations "where the particular facts warrant" the principle's application. It was also emphasized in these cases that the application required more than evidence of mere inaction or silence by a person who has no obligation to speak or act in the particular situation.

There must be a showing of an express representation or other affirmative conduct which amounts to a representation that could reasonably deceive another and induce a reliance that would work to the disadvantage of the individual relying upon the representation.

■ The defendants, in arguing for a dismissal of plaintiff's suit on the ground of its untimeliness, stress that silence, in the absence of a duty to speak, will not justify the invocation of an estoppel. We have no quarrel with this proposition. *Loiselle v. City of East Providence*, 116 R.I. 585, 359 A.2d 345 (1976); *Schiavulli v. School Committee of North Providence*, 114 R.I. 443, 334 A.2d 416 (1975). However, as will be seen, there is ample evidence of affirmative representations that, if countenanced by this court, would work to the disadvantage of plaintiff.

Here, the trial justice believed plaintiff and rejected defendants' view of what transpired within the Gross family circle since 1960. In his bench decision the trial justice described plaintiff as an individual who was "good" to his brothers and sisters as well as being the "driving force" that resulted in bringing to fruition a corporate entity whose success can redound to the benefit of all the litigants. To demonstrate this drive, we shall detail some of the events alluded to earlier in this opinion.

As noted earlier, in the midforties the litigants' father conveyed to Newell a seven-plus-acre parcel of real estate that was situated in East Providence on Newport Avenue and upon which the father had conducted a junk business. At the same time, the father also conveyed to the realty corporation four lots. The four lots were located on a narrow portion of Anama Street. This street separated the four smaller lots from the seven-acre parcel. Two of the lots abut Newport Avenue. Both conveyances were subject to an outstanding mortgage.

During the 1950s plaintiff acquired title to thirteen lots that either were adjacent to or surrounded the four-lot parcel situated at the intersection of Anama Street and Newport Avenue. In the late spring or early summer of 1960, plaintiff indicated to defendants that he would be willing to convey the thirteen lots to Newell if, in return, he would receive from each defendant five shares of Newell stock so that he could gain control of the corporation. The defendants all agreed to the proposition, and a deed conveying the thirteen lots was prepared. However, plaintiff's brother changed his mind, saying he was not in favor of buying the eight lots known as the O'Hearn lots. The deed was executed, but that portion of the description dealing with the O'Hearn lots was crossed out. The sisters, who were in favor of the thirteen-lot transaction, ultimately prevailed upon their brother to acquiesce in a complete transfer of the properties, and plaintiff then conveyed a one-fifth interest in all of the O'Hearn lots to each defendant. Then all four siblings conveyed all their interest in the lots to Newell.

At this time Newell was using the services of a Fall River, Massachusetts, law firm. The two conveyances were done in reliance upon the advice of counsel and, in plaintiff's words, was that such conveyances were for "tax purposes."

In 1957, plaintiff had effectuated an abandonment of a portion of Anama Street, and Newell had, through plaintiff's diligence and foresight, become the owner of a large vacant portion of land situated on a busy thoroughfare. The plaintiff hired a contractor, who built a commercial building on the premises, and in 1972, American Toy, which had rented the premises, experienced financial difficulty and vacated the premises. The plaintiff then negotiated a lease with Child World, a nationally known toy distributor. The rent for such an operation was negotiated by plaintiff who based it upon a certain percentage of the toy company's sales. At no time during this period did any defendants challenge plaintiff's role as the decision maker. Today, Newell, thanks to plaintiff, is a success.

The cases relied on by defendants involve a plaintiff's claims that the defendants should not be permitted to invoke the statute of limitations because the defendants' representations or conduct lull a plaintiff into a belief that its claims would be resolved without the institution of litigation. *Shea v. Gamco, Inc.,* 81 R.I. 12, 98 A.2d 864 (1953).

■ Here, of course, there was an affirmative representation made to plaintiff in 1960 when each defendant agreed to transfer five of his or her twenty shares of Newell stock to the corporation's "driving force." Their silence during the ensuing years as plaintiff labored unceasingly to make the Newport Avenue complex a profitable endeavor cannot be tolerated. In our opinion, the trial justice was amply justified when he ruled that defendants were estopped from raising the defense of the tardiness of the instigation of litigation.

■ One other fact of this appeal which deserves comment is the contention made by the plaintiff's sister, Helen, that his claim should not be heard because of the bar of judicial estoppel. When the plaintiff testified in Massachusetts at Helen's divorce hearing, he told the trial justice that his sister owned twenty shares of Newell stock. Judicial estoppel precludes a party from taking a position inconsistent with the position previously taken with respect to the identical party in an earlier law suit. *Himel v. Consolidated Illinois National Bank and Trust Co. of Chicago,* 596 F.2d 205 (7th Cir.1979); *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981). We will not consider this issue because of our well-established rule that issues not raised before the trial justice will not be considered for the first time on appeal.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.