## Logue *v.* Gallagher et al., Appellants.

Argued September 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*J. Webster Jones,* for appellants.

*Herbert Welty,* with him *Hyman A. Guth,* for appellee.

OPINION BY CUNNINGHAM, J., December 20, 1938:

This is the second appeal by the alleged employer, E. A. Gallagher, and his insurance carrier in this workmen's compensation case. In our former opinion, filed December 31, 1936, and reported in 124 Pa. Superior Ct. 328, 188 A. 395, we set out the general factual background of the claim of the widow of John Logue, the alleged employee, and will, therefore, confine this opinion to the grounds upon which we vacated the judgment then appealed from and remitted the record for additional testimony and further consideration by the board and common pleas.

The ultimate inquiry in the case is whether the decedent was, when injured, an "employee" of the defendant, within the meaning of Section 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §22.

Clearly, the work he was doing in the defendant's garage at the time he was fatally injured on a Sunday afternoon, through the explosion of a truck tire upon which he was working, was casual, but the issue upon which the case hinges is whether the decedent was "performing services for [the defendant] for a valuable consideration" and in the regular course of the defendant's business of hauling and trucking, as contended by claimant, or merely serving his own purposes by putting into good running condition a truck he had arranged to borrow from defendant for the purpose of moving his (decedent's) household goods to a new home the following day, as asserted by the defendant and his insurance carrier.

In our former opinion we held, upon a review of the testimony then on the record, that the only finding it would support was that during a prior period of regular employment as a driver for defendant, which ended some seven months before the date of the accident, the decedent had been paid at the rate of fifty-five cents per hour.

We also there held the referee had improperly excluded an offer to prove a conversation between defendant and decedent, shortly before the accident, relative to borrowing a truck.

Another reason for returning the record was that we understood counsel for the appellants to say. at the oral argument his clients were prepared to show the decedent was injured while working on the truck he had arranged to borrow.

Upon the return of the record to the board it was referred to a different referee, who took additional testimony at several hearings. The following testimony of Gallagher relative to a conversation with Logue several hours before the accident was not controverted: "Q. When he (Logue) came in the office, will you tell what he said to you and what you said to him in the office? A. When I first seen John (Logue) and Tom (McDermott) in the garage together, Tom started on his work and finally Johnny came in the office. Q. And what did John say to you? A. He said, 'Ed, I am going to move. I want to know if I can borrow a truck.' I said, 'Yes, you can have the green trailer there.' I told him he could get it early in the morning. Q. After that conversation, what did Logue do? Did he go out of the office? A. Yes, he went in the garage."

The additional testimony also fully supports these findings of the referee with relation to the circumstances of the accident and the identity of the truck with which decedent was concerned when it happened:

"The decedent, accompanied by one, Tom McDermott, an employee of the defendant, arrived at the defendant's garage on [Sunday, June 24, 1934] at or about 11:30 A. M.

"Shortly after arriving at the garage, McDermott proceeded to change six tires on a truck belonging to defendant. In this work he was assisted by the decedent. Tom McDermott came to the garage on the day

in question in his working clothes. The decedent was attired in ordinary street clothes.

"McDermott and the decedent were occupied with the changing of the tires, above referred to, until about three o'clock, whereupon McDermott went to an adjoining lot where a trailer belonging to the defendant was parked, and removed two tires from off the trailer. Defendant's son, Arthur, then proceeded to the lot and rolled one of the two tires from off the trailer to the door of the defendant's garage, and placed the same at the feet of the decedent, who was then standing on the sidewalk near the entrance to the garage. The two tires which had been removed from the trailer, one of which was placed at the decedent's feet, were to be sent away for retreading.

"As Arthur Gallager deposited the tire at the decedent's feet, he saw the decedent pick up a sledge hammer and walk toward the tire. Young Gallagher proceeded through the entrance of the garage into the garage, and a few seconds thereafter heard an explosion, and upon turning his head in the direction from which he had just left the decedent, observed the [hammer and] decedent flying through the air.

"The decedent was engaged for a period of at least three and one half hours in assisting McDermott in the changing of six tires on the truck which the following day was sent to New York. ...... No work was performed by the decedent on the truck which the defendant had agreed to lend to the decedent for the purpose of moving his household effects."

These findings dispose of most of the issues of fact which were in dispute when our former opinion was written and indicate that counsel for appellants were evidently misinformed with respect to the circumstances surrounding the accident. Nor can it be seriously questioned that the work done was in the regular course of Gallagher's business.

Upon the other branch of the case, which was not

clear upon the first appeal, we now have this definite finding by the referee: "Your referee finds it a fact that the decedent was employed by the defendant on the day in question to assist McDermott in the removal of tires from off a truck and trailer belonging to the defendant, and that he met his death as the result of an accident sustained during the course of that employment."

The referee stated he was unable to find "a definite wage was agreed upon," and therefore calculated his award upon the basis of the prevailing wage.

Concededly, the above finding is not supported by any direct evidence, but is an inference from a number of circumstances appearing from the record. For instance, the claimant testified Gallager told her a few days after the accident that he had "put her husband to work that Sunday." Gallagher made this admission at the last hearing: "I recall when I did go up to Mrs. Logue I told her I was very sorry the accident occurred. I told her I was insured and I thought everything would come out right."

The following declarations by Gallagher were testified to by various witnesses and denied by him:

"Tom (McDermott) had a lot of work to do, so I put him (Logue) to work helping Tom." "Johnny came out here every now and then on a Sunday and worked for me." "Yes, he (Logue) was working here on these tires." The referee, in addition to accepting the testimony of the witnesses, Driscoll, Mulligan and Graham, and rejecting Gallagher's denials, directed attention to the improbability that decedent would have "assisted McDermott in performing heavy and laborious work on the Sabbath Day unless some arrangement had been made with the defendant for remuneration."

In affirming the referee's award, the board, citing *Haddock v. Edgewater Steel Co. et al.*, 263 Pa. 120, 106 A. 196, points out that "the right and power [are] vested in the compensation authorities to find the fact[s], whether from direct proof, circumstantial evi-

dence or by inference from other facts." The court below in entering the judgment now appealed from expressed the opinion that the record contains "sufficient evidence" to support the findings of fact of the referee as adopted by the board.

We cannot agree with the proposition advanced by the learned counsel for appellants that Gallagher's denial that he made the above quoted admissions or declarations against interest "destroys the probative value of the alleged admissions." The testimony of the witnesses who testified to the making of the admissions indicates they were freely and voluntarily made. If thus made, they were clearly admissible and of high evidentiary value: *Hoffa v. Hoffa,* 38 Pa. Superior Ct. 356, 362; *Heyman v. Hanauer,* 302 Pa. 56, 61, 152 A. 910, and cases cited.

Gallagher's denial that he made the admissions merely raised a straight issue of credibility as between the witnesses who said he did make them and himself. It was within the exclusive province of the compensation authorities to decide that issue. We are without authority to weigh conflicting evidence or determine what inferences should be drawn therefrom.

Upon consideration of the entire record as it now stands we cannot say there is no competent evidence supporting the award.

Judgment affirmed.