Opinion by
 

 Cunningham, J.,
 

 This appeal in a workmen’s compensation ease is by the defendant employer, J. S. Arthur and Company, and its insurance carrier, from a judgment entered in the court below upon an award of compensation to Jesse H. Howard, Sr., and his wife, Mary L. Howard, as the partially dependent parents of their son, Jesse H. Howard, Jr., nineteen years of age, who was fatally burned on February 23, 1938, when he was accidentally “caught in a slide of hot red dog,” during the course of his employment.
 

 The case has had a somewhat involved, and from a legal point of view interesting, history, but it is not essential to the proper disposition of this appeal that it be reviewed in detail. It first reached the court below in the summer of 1939. That tribunal then held, inter alia, that “dependency is to be proven as a fact,” and that the “condition upon which a presumption of dependency arises, that the child ‘has been contributing to his parents,’ must [also] be proven as a fact.”
 

 The concluding paragraph of the opinion, filed Au
 
 *214
 
 gust 26, 1939, reads: “Neither of these facts have been determined and the record must be returned to the board for the purpose of determining them without regard to the provision of the Workmen’s Compensation Act of 1937, P. L. 1552, Section 307, clause 5, [77 PS §561] that [when any contributions have been made] dependency ‘shall be
 
 conclusively
 
 presumed.’ ” Upon the return of the record, the present board set aside all previous actions of the former referee and board and remanded the case to Referee Gibb, who conducted hearings on April 17 and May 22, 1940.
 

 The referee found, in brief, that decedent’s wages as a laborer averaged $15 per week and that the amounts paid by him to his parents were “for board” and “not necessary for the maintenance of the home,” in which decedent, his parents, and a sister nine years of age lived. An order of disallowance was accordingly entered.
 

 Upon claimants’ appeal to it, the board, being of opinion that the above findings of the referee were not based upon a preponderance of the testimony, struck them out and in an opinion by Chairman Murphy substituted the following:
 

 “5. The decedent, Jesse H. Howard, Jr., was a minor, nineteen years of age, and lived with his parents, Jesse H. Howard and Mary L. Howard, at the time of the unfortunate accident causing his death. For some four months prior to his accidental death, the decedent had been employed by the defendant. During this period of time, the decedent made weekly contributions to his mother who was the manager of the family fund used in maintenance of the family in the amount of $6 to |8.
 

 “5-A. That the decedent’s father, Jesse H. Howard, was employed by a dairyman, receiving an average weekly wage of $15 with house rent and two quarts of milk daily. His entire earnings were contributed towards the support of the family.
 

 
 *215
 
 “5-B. The monthly expenditure for food by the manager of the family fund was $40. Insurance was carried on the life of the father, Jesse H. Howard, and a weekly premium of 45 cents paid. Insurance was carried on the life of the decedent, but the amount paid for the premium does not appear. While the amounts paid for other necessary family expenditures do not appear, it may be assumed the money was paid out of the family fund for clothing, oil for lighting the home, coal for heating the home and cooking, taxes, recreation, medical and dental care.
 

 “5-C. The decedent purchased his own clothing with that portion of his earnings not contributed to the family fund and received only board and lodging from the family fund. The decedent received less from the family fund than he contributed thereto and that portion of his contributions not used for his board and lodging was contributed to the support of his parents who were partially dependent thereon.”
 

 Upon these findings the board made an award, under the provisions of the fifth paragraph of Section 307 of our Workmen’s Compensation Act, as amended and reenacted by the Act of June 4, 1937, P. L. 1552, 77 PS §561, (and the further provision thereof fixing $18.50 as the minimum weekly wage upon which “death compensation” shall be based, 77 PS §581) “at the rate of $4.63 per week, being 25% of the statutory minimum wage in death cases, for a period of 500 weeks from seven days after the date of the death of the deceased employee, provided that the claimants or either of them shall so long survive.”
 

 The employer and its carrier appealed to the common pleas. In an opinion by Gibson, J., their appeal was dismissed and judgment in the total sum of $2,315, entered upon the award, with this qualification: “Subject to any future termination, modification, suspension or reinstatement justified by any change in the circumstances.”
 

 
 *216
 
 Parenthetically, it may be noted that as the compensation law stood prior to the Act of 1937 the award could not have been made for a period longer than 300 weeks, which at the weekly rate fixed by the board' would have made a total award of only $1,389,
 

 The only question of law involved upon this appeal is whether the record contains sufficient competent and substantial evidence
 
 (Wilbert v. Com. Sec. Reserve Acc. et al.,
 
 143 Pa. Superior Ct. 37, 48, 17 A. 2d 732, and
 
 Metalko v. Ford Collieries Co.,
 
 146 Pa. Superior Ct. 206, 22 A. 2d 222), to justify the findings of the board.
 

 From our examination of the record we are satisfied the findings of the board are supported by evidence sufficient in quantity and quality.
 

 The only feature of the evidence which would naturally cause a fact finder to hesitate is the contradictory testimony of the father.
 

 On the same day his son’s body was brought 'home he was interviewed by W. M. Welch, the adjuster for the insurance carrier, who obtained a statement from him relative to the amount of his son’s wages, the financial affairs of the family, etc.
 

 The material portion reads : “I support my home. I live in a house owned by McClane. This house is figured in my salary so I do not actually pay out any cash for rent. Since fall, Jesse H. Howard, Jr., paid $4 a week to my wife for his board. He used the rest for his clothes, etc. I do not know exactly what salary he received.”
 

 At the first hearing before a referee in June, 1938, the father was the only witness. When asked what his son did with the money he earned, he replied: “Well, he paid his mother $4 a week for board, and bought clothes.”
 

 When called at the hearing in 1940, he testified his wife took care of the family “buying” and that the
 
 *217
 
 deceased gave her money which was depended upon to “help keep up the house,” since his earnings were not “sufficient to keep and maintain the family household.”
 

 His explanation of the apparent conflict was that he had not consulted an attorney prior to the first hearing, did not then know the difference between his son “helping” the family and paying “board,” and had used the figure of “|4 a week,” which appeared in the signed statement and his testimony at the first hearing, at the suggestion of the insurance investigator when he called the day following the fatal accident. This testimony, standing alone, might not be adequate to support a conclusion, but it does not stand alone.
 

 With relation to contributions by the decedent and the issue of dependency, Mrs. Howard testified: “Q. Will you tell us how much money you received at the time [decedent] was working for the J. S. Arthur Company? A. He gave about five or six dollars a week and then through the week he would give me a couple of dollars when I needed it for things for the house. Q. Was this money necessary or not for the upkeep of you and your family? A. It was. Q. Was it used for that purpose? A. Yes, it was used for that.” She also stated that while her son was in the army for a month and eighteen days he sent her ten dollars and gave her the money he earned while working on a farm, to use for the family; her husband always gave her, for managing the house, the fifteen dollars a week he earned which, with the money received from decedent was the only source of family income; she spent “over forty dollars a month” for food and her son had always eaten his lunch at home; they received free rent and two quarts of milk a day from Mr. Howard’s employer; Mr. and Mrs. Howard, the decedent and his minor sister had lived in a four-room house with a bath but no hot water, used oil for lighting and coal for cooking and heating and had no automobile. To the question asked on cross-examination : “There has been no change in your financial set-up
 
 *218
 
 since — since the death of your son?” — she answered: “I haven’t had the things — I can’t have lots of things I want; — Sometimes I hear people talk about things to eat and I get so hungry for them — I wish I could get them.”
 

 Mrs. Romaine McWreath, a married daughter of claimants, testified she had “always” visited her parents about three times a week prior to her brother’s death and decedent gave her mother “five or six [dollars] when he got paid — sometimes one, two or three during the week.” When asked whether she was told about that she replied: “No, I would see it.” The witness also explained to some extent, at least, the statements made by her father to the insurance adjuster. Referring to the day after decedent’s death she testified: “[Mr. Welch] came in and of course asked questions about the ages and all, then he wrote down on a paper that my brother was not helping any at home and my father said he wouldn’t sign it, that he was helping and always had helped ever since he worked — ever since he had money at all he had given mother money, and he said what was he giving and dad said five or six dollars, sometimes one or two, and he said that will just average four dollars and mark it board and of course dad said yes — he was all upset at the time and just agreed with him. Q. Did your dad sign the paper? A. Yes, he did. He didn’t say anything about board, it was Mr. Welch that said board.”
 

 Welch, when called as a witness, insisted that the statement about “board” had come from the father. The conflict between the testimony of the daughter and that of the insurance adjuster was entirely for the board. As was said in
 
 Kelly et ux. v. Hudson Coal Company,
 
 119 Pa. Superior Ct. 405, 407, 179 A. 753: “If a finding of dependency is based upon competent evidence, or upon an inference fairly deducible therefrom, an award must be sustained, although, upon an independent consideration of the evidence, we might have
 
 *219
 
 reached a different conclusion.” See also,
 
 Williams v. John B. Kelly Co. Inc.,
 
 128 Pa. Superior Ct. 228, 230, 193 A. 97. Moreover, in the case last cited it is held that the term “dependency” contemplates “actual” but does not imply “sole” dependency, and “if the contributions made by deceased were required to meet the ordinary necessities of life for a person in the position of claimant, the requirements of the statute are met.” See also
 
 Bucci et ux. v. Lincoln Coal Company, Inc., et al.,
 
 140 Pa. Superior Ct. 538, 542, 14 A. 2d 359.
 

 As suggested in the opinion of the court below, even if the testimony of the father be disregarded, the inference of a partial dependency may properly be drawn from the testimony of the mother which is neither contradicted nor contradictory. None of the assignments can be sustained.
 

 Judgment affirmed.