## Taggart v. Grimm et al.

*John Milton Ranck* and *William C. Storb,* for plaintiff.

*George T. Hambright,* for insurance carrier.

WISSLER, J., March 19, 1943.—Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company appealed from the decision of the Workmen's Compensation Board made December 14, 1942, awarding compensation to Mary E. Taggart, claimant, as a dependent, for the death of her son, Albert Stout.

The referee found the facts to be that Albert Stout, the son of claimant, on March 6, 1942, was in the employ of Stewart Grimm, the defendant, as a laborer, and on that date, in the course of his employment with

defendant, the decedent, Albert Stout, while riding on a truck loaded with cinders which were to be placed on a farm road or lane owned by defendant, fell off the truck and under it, resulting in his death the same day; that defendant was in the garbage disposal business. The Workmen's Compensation Board found, in addition, that Stewart Grimm owned four farms, three of which were rented out on a share basis, and on which he had piggeries in connection with the garbage business; that he lived on the fourth farm which consisted of ten acres; that the regular work of decedent was helping defendant in garbage collections, and when that work was finished about noon of each day he helped to feed the garbage to the pigs on said farms owned by defendant and did any other work that defendant required him to do the balance of the day; that on March 6, 1942, he was asked to haul cinders, which he was doing at the time of his accidental injury and death; that decedent left to survive him his mother, Mary E. Taggart, the claimant, who was partially dependent upon him for support at the time of his accidental injury and death.

The referee concluded as a matter of law that decedent at the time of his fatal injury was not engaged in agriculture within the meaning of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 21, 1939, P. L. 565, and that claimant was partially dependent upon decedent on March 6, 1942.

The Workmen's Compensation Board affirmed the findings of fact, conclusions of law, and order of the referee, and dismissed the appeal of the Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, insurance carrier for defendant. . . .

From this decision of the board, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, insurance carrier for defendant, has taken the present appeal.

The findings of fact of the referee and the board were based upon competent evidence or inferences fairly deducible therefrom, and are binding upon this court: Howard v. McClane et al., 146 Pa. Superior Ct. 212 (1941) ; so that the only questions raised by the exceptions on this appeal are questions of law: (1) Was decedent at the time of his injury an agricultural worker engaged in agriculture within the meaning of The Workmen's Compensation Act of 1915, supra; and (2) was claimant partially dependent upon decedent at the time of his injury?

As to the first legal question, The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 21, 1939, P. L. 565, 77 PS §1a, provides:

"Nothing contained in any article or any section of the act, approved the second day of June, one thousand nine hundred and fifteen (Pamphlet Laws, seven hundred thirty-six), entitled, as amended 'An act defining the liability of an employer to pay damages for injuries received by an employe in the course of employment' . . . shall apply to or in any way affect any person who at the time of injury is engaged in domestic service or agriculture . . ."

It seems that the precise question here involved has not been before our appellate courts. In Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399, 403 (1932), Judge Cunningham quoted the following from the opinion of the lower court:

"Agriculture as defined by Webster in the 'art or science of cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, planting of seeds, the raising and harvesting of crops and the rearing, feeding and management of livestock.' In Funk & Wagnall's dictionary agriculture is defined as 'a science that treats of the cultivation of the soil,' and under this definition it is stated 'agriculture as a generic term includes at once the science

or art and process of supplying human wants by raising products of the soil and by associated industries.' "

According to the dictionary definition, agriculture is given the generic and broad sense which would include the more circumscribed and limited sense of cultivating the ground within the definition in Springer v. Lewis, 22 Pa. 191 (1853), in which a person was defined as "actually engaged in the science of agriculture" when he derived the support of himself and family in whole or in part from the tillage of fields. He must cultivate something more than a garden, though it may be much less than a farm.

Words which are not defined by The Pennsylvania Workmen's Compensation Act, itself, must be taken in their popular sense, if not contradictory to the object and intention of the lawmakers: Carville v. A. F. Bornot & Co., 288 Pa. 104 (1927) ; Ottavi v. Timothy Burke Stripping Co., 140 Pa. Superior Ct. 389 (1940).

In Fazio v. Pittsburgh Railways Co., 321 Pa. 7 (1936), the court quoted with approval 25 R. C. L. 1017, §255:

". . . when the design of the legislature is not clearly apparent, it is always to be presumed that a statute was intended to have the most reasonable and beneficial operation that its language permits. And when a statute is ambiguous in terms or fairly susceptible of two constructions, the injustice, unreasonableness, absurdity, hardship, or even the inconvenience which may follow one construction may properly be considered and a construction of which the statute is fairly susceptible may be placed on it that will avoid all such objectionable consequences and advance what must be presumed to be its true object and purpose."

We come, therefore, to the crux of the matter by asking the question: What did the legislature intend in using the words "agriculture" and "agricultural workers"? Did it use them in the popular and limited sense, or in the broad and generic sense as defined in the dictionary?

▉▉▉▉▉▉▉▉▉▉▉▉▉▉

It seems that it used these words in the popular and limited sense when it is taken into consideration that, at the time of the passing of The Workmen's Compensation Act of 1915, farming was still done more or less in a primitive manner, as compared with the modern farming by machinery. Farming, even in the modern sense, is limited to a few units of employes and simple machinery. The very nature of the occupation of a farmer is such that the employes are few in number and are not subject to the everyday risks involved with the use of complicated machineries, and it is no doubt with this in mind that the legislature especially exempted employes engaged in agriculture and domestic service from the provisions of The Workmen's Compensation Act.

The objects and purposes of The Workmen's Compensation Act were to remedy the results of modern industrial development, requiring the use of dangerous appliances and machinery, leaving injured employes without adequate or certain relief under ordinary common-law actions. The remedy was to give the employe a more equitable, inexpensive, and certain relief, leaving the burden to be absorbed by the proceeds of industry.

In the recent case of Jack v. Belin's Estate et al., 149 Pa. Superior Ct. 531, the court stated, in passing upon the question of whether or not claimant was a domestic servant exempted in the same act from the effect of The Workmen's Compensation Act, at page 533:

"The coupling of domestic servants with agricultural workers, in the same act, is significant. Agricultural workers are those who are engaged in an enterprise conducted by the employer for his profit. House servants merely contribute to the personal needs and comfort of the employer. Between the two groups are the outservants, who in strictness do not fall within either class. And yet there is much better reason for ex-

cluding gardeners, caretakers and the like, than agricultural workers, for they are not engaged in commercial enterprise and their services all relate to the home life."

This case also holds, in construing The Workmen's Compensation Act of June 21, 1939, P. L. 565, 77 PS § 1a, which supplements the original Workmen's Compensation Act of 1915, supra, that the place where the services are performed does not determine the nature of the employment.

In addition, and apart from this distinction as to the definition of agriculture in the generic or popular sense, the main employment of decedent, as disclosed from the facts and as so found by the referee and the board, was that of collecting garbage. Whether we treat the hauling of cinders for the purpose of maintaining the private lane into one of the farms of defendant as a necessary act for giving better access to defendant's piggeries located thereon, or whether we treat the repair of this lane as a necessary part of the farming operations (even though defendant had rented this farm on shares and was, therefore, out of actual possession of the farm for strictly farming purposes), decedent's main employment was as a laborer in the collection of garbage and the disposal of it, and the work which he was doing on this particular day at the request of his employer, the defendant, was incidental, and would come within the decision in Matis et al. v. Schaeffer, 270 Pa. 141 (1921), in which it was held that a person employed for other purposes, but incidentally performing agricultural work at the request of his employer, is not "an agricultural worker" within the meaning of The Workmen's Compensation Act. . . .

And now, March 19, 1943, appellant's exceptions to the award of the Workmen's Compensation Board and the appeal from that award are hereby dismissed, and the award is affirmed.