Greap *v.* Oberdorff, Appellant.

154

Argued March 14, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Clair Groover,* for appellant.

*Charles Wolfe Kalp,* for appellee.

OPINION BY ERVIN, J., April 18, 1955:

This is an appeal from the order of the lower court affirming the award of the Workmen's Compensation Board in favor of the claimant, Ralph W. Greap, against J. J. Oberdorff, defendant. The board affirmed the order of the referee.

The single question presented on this appeal is whether there was sufficient competent evidence to sustain the finding of the referee and the board that on February 27, 1953, Ralph W. Greap was an employe of J. J. Oberdorff. The defendant contends that there is no basic finding of fact either by the referee or by the board that the relationship of employer and employe existed and argues that Ralph W. Greap was an independent contractor. The board, after reviewing the evidence, stated: "Our review of the record discloses a direct conflict of testimony. The conflict was

resolved in favor of the claimant and we find no error warranting the reversal of the referee's judgment of the credibility of the evidence. The claimant testified that he had worked for the defendant at an hourly wage of $1.00 and that he worked about 40 hours per week. This testimony was sufficient to support the finding of an employer-employee relationship at the time of claimant's accident on February 27, 1953. Further, there is no definite evidence that claimant signed a contract for work on the operation where he was injured and the defendant's vague testimony as to his lumbering records and methods of payment does not seem entitled to credence." In our opinion this was a sufficient finding of fact to cover the fundamental question involved in this case.

There was a definite conflict in the evidence as to whether a written contract for this particular job had been signed by the plaintiff. The plaintiff testified that he had previously signed a contract for a former job but that he did not sign a second agreement covering this job. Three fellow workmen were called as witnesses by the defendant and it is significant that each one of them testified that he did not see the plaintiff sign the second agreement and that he did not know what terms the plaintiff was working under when he was injured. If they were partners in this venture with the plaintiff, they could hardly have testified in such manner. The defendant failed to produce a signed written contract for the job upon which the plaintiff was injured. He produced an unsigned copy without satisfactorily accounting for the original. He testified as follows: "Q. Had Ralph Greap signed that contract? A. I would say yes, I think he signed it when we operated that second job." The writing contained a provision that the defendant was to pay $30.00 per thousand feet of piled, sawed lumber. There was ample

evidence to justify the finding of the referee and the board that such a contract had not been signed by the plaintiff.

There is also a definite conflict in the testimony as to how the plaintiff was paid. He testified that he had been paid $1.00 per hour for about two years prior to the accident and he denied that he had been paid at the rate of $30.00 per thousand board feet. The three fellow workmen testified that the defendant paid each one in cash each week. They stated that the defendant divided the money and they did not question how it was made up. They did not keep books or records to show how much timber was processed. All records were kept by the defendant. The defendant himself testified that he paid the men on the basis of $30.00 per thousand board feet. If the contract which the defendant claims existed was in force, it is difficult to understand why he did not pay the money in a lump sum to the workmen and let them divide it among themselves. There was a definite conflict in the testimony as to whether the plaintiff was paid an hourly wage of $1.00 or whether he was paid, along with his fellow workmen, on the basis of $30.00 per thousand board feet. The referee and the board chose to believe the plaintiff and the board stated: ". . . the defendant's vague testimony as to his lumbering records and methods of payment does not seem entitled to credence."

In a case of this kind it is important to determine whether the defendant exercised control over the manner of doing the work. In this connection the plaintiff testified as to the following events on the day of his injury: "He [defendant] sawed that day and then he asked what time it was and I told him, and he made a motion for Edward Kline to shut the mill down, and he said we would eat early dinner and then we would

cut some of that big timber for the order at Danville; and then we cut this timber and fetched it up and started to load it." There was no specific denial of this testimony. The three witnesses produced by the defendant testified generally that the defendant did not attempt to control the manner in which they performed their work. This is easily understood, however, in view of the fact that all of these men were woodsmen of long experience and did not have to be told how to perform that type of work. From the evidence of the plaintiff alone, the referee and board were justified in finding that the defendant did control the manner of doing the work where any control was necessary. It must be remembered also that the defendant supplied the trucks, the tools, the saws, the sawmill and all of the equipment necessary for the operation. Plaintiff testified that immediately after the happening of the accident he said to defendant: ". . . 'If my leg is broken in two places, take me to Geisinger [a hospital in Danville].' He [defendant] said, 'No, I'll take you to the Evangelical Hospital.' So he took me to the Evangelical Hospital." This likewise would indicate that the defendant was controlling the situation at the very time when plaintiff's injury occurred.

On an appeal in a workmen's compensation case our review is limited to matters of law and where the findings of fact made by the board are based on competent evidence, they are conclusive and the court has no power to weigh the evidence and revise the findings or reverse the final action of the board. *Logue v. Gallagher et al.*, 133 Pa. Superior Ct. 570, 3 A. 2d 191; *Howard v. McClane et al.*, 146 Pa. Superior Ct. 212, 22 A. 2d 225; *Diaz v. Jones and Laughlin Steel Corp.*, 170 Pa. Superior Ct. 608, 88 A. 2d 801.

The credibility of witnesses and the weight to be given to their testimony is for the compensation au-

thorities and not for the court. *Segs v. Consumers Min. Co. et al.,* 167 Pa. Superior Ct. 308, 74 A. 2d 688. Of course there may not be a capricious disregard of competent evidence. *Spencer v. Feitelson & Sons,* 158 Pa. Superior Ct. 410, 45 A. 2d 260.

We have carefully read the entire record in this case and have come to the independent conclusion that there was no capricious disregard of testimony by the referee or the board. None of the disinterested witnesses testified that they saw the plaintiff sign an agreement for the work which was being done at the time of his accident. All of the disinterested witnesses testified that they did not know the terms of plaintiff's employment at the time of the accident. While the disinterested witnesses did testify that they were paid on the basis of $30.00 a thousand board feet, they all admitted that the defendant paid each workman in cash each week and that the defendant kept all of the records and divided the money in such manner as he saw fit without any questions being asked by them as to how the division was made among the several workmen. None of the disinterested witnesses denied the testimony of the plaintiff as to the control which was being exercised by the defendant upon the day the plaintiff was injured.

Judgment is affirmed.