Smiley *v.* Heyburn, Appellant.

Argued April 22, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

reargument refused July 30, 1957.

*Harry J. Rubin,* Deputy Attorney General, with him *Thomas D. McBride,* Attorney General, for appellants.

*Sabato, M. Bendiner,* with him *Mervin J. Hartman* and *Busser & Bendiner,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1957:

Darrell W. Smiley, former member and Chairman of the Pennsylvania Labor Relations Board, filed an action in equity* against Weldon B. Heyburn, State Treasurer, and Charles R. Barber, Auditor General of Pennsylvania, to compel them to pay to him various sums of money allegedly due because of increases in pay voted by the Legislature after he took office on June 29, 1943, and accumulating up to the date he was removed from office by the Governor on February 5, 1954.** The defendants refused payment, asserting

---

* Plaintiff had proceeded by Bill in Equity instead of by action in mandamus, but defendants were "willing that plaintiff's bill in equity shall be amended or treated as a petition for a writ of mandamus" and the court below so treated it, stating that "In so doing, however, we do not wish to be considered as establishing a precedent." We approve of the Court's action and statement in this respect.

** Plaintiff later conceded his claim (because of the Statute of Limitations) could not go back farther than six years prior to the institution of suit.

that in view of the plaintiff's status as a public officer, he was prohibited from receiving increases in salary by virtue of Article III, section 13 of the Pennsylvania Constitution, which reads: "No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

The Court of Common Pleas of Dauphin County, sitting as Commonwealth Court, held that the plaintiff was not a "public officer" within the meaning of the constitutional provision cited, explaining that: "Whether or not members of independent administrative bodies such as the Pennsylvania Labor Relations Board are public officers seems to depend upon whether that Board is an agent, arm, deputy or committee of the legislature, because our Supreme Court has decided that the constitutional prohibition in question is not applicable to agents of the legislature."

This statement perhaps covers too much ground. The constitutional provision cited makes no reference to any particular branch of the government. The section is broad enough to cover all three branches: legislative, executive, and judicial. Whether a person in government service is or is not a public officer is not dependent on the branch of the government which employs him but by the character of the service and the character of the office.* It would appear that our decision in *Snyder v. Barber*, 378 Pa. 377, which held that a member of the Milk Control Commission was not a "public officer" within the meaning of the Constitution provision involved, has been read by plaintiff, defendants, and the lower Court in a sense not intended. That

---

\* Though by the provisions of Article II, section 8 and Article V, section 18, members of the legislature and the judiciary are expressly removed from the restrictions of Article III, section 13.

ruling was not based on any arbitrary distinction between the branches of government involved or that the Milk Commission was excluded from the purview of the prohibitory constitutional commission merely because it was an agent of the legislature. We said there that the Commission was created and empowered by the legislature to act for it principally in legislative matters. It is true we said: " 'The reason underlying Article III, Sec. 13, namely, to eliminate political or partisan pressure upon incumbents of office after they had been elected or appointed, does not apply to members of the Public Utility Commission, because the legislature has a much greater power over the commissioners than the power to change salaries could give it. The legislature has the power to abolish the commission entirely as indeed it did in 1937 when it abolished the Public Service Commission . . .' " However, we did not base our decision on that proposition alone. In addition to the fact that the Legislature had the power to abolish the Milk Commission, it is not to be overlooked that the Commission was performing legislative functions in behalf of the Legislature. At page 380 we said: "The functions performed by the Milk Control Commission, from a governmental point of view, are not unlike those devolving upon the Public Utility Commission . . ." whose functions were held "strictly legislative in character" in *Commonwealth ex rel. Attorney General v. Benn*, 284 Pa. 421, 429. The primary function of these two commissions was ratemaking, an admittedly legislative function.

The functions of the Pennsylvania Labor Relations Board are quite different in character from those performed by the Milk Control and Public Utility Commissions. The Board, in determining appropriate collective bargaining units for groups of employees and preventing unfair labor practices, exercises investi-

gative powers and may issue complaints and hold hearings. We have already held that the Labor Relations Board is quasi-judicial in character: "This means that it is the function of the board not only to appraise conflicting evidence, to determine the credibility of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances". *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.*, 345 Pa. 398, 400.

The United States Courts of Appeals have frequently referred to the National Labor Relations Board, after which the Pennsylvania Board has been patterned, as a quasi-judicial body. In the case of *National Labor Relations Board v. West Texas Utilities Co.*, 214 F. 2d 732 (5th Circuit), the Court said: "The Board and all of its hearing agents should understand they are not the representatives or partisans of either side in holding an election or hearings in which representation of employees is sought. This is particularly true here because the Board, in part at least, is endowed with all the three great powers of government, legislative (making rules of procedure), judicial (deciding the vital and important issues arising between employer and employee as well as between either of these and the union), and executive (initiating proceedings for enforcent of its decrees.)"

In view of the predominant quasi-judicial functions of the Pennsylvania Labor Relations Board, it cannot be said that it functions merely as an adjunct of the Legislature. The members of the Board, since their duties are principally quasi-judicial in nature and are performed for the public at large—not merely for the legislature as agent—can truly be described as "public offices" within the intendment of Article III, section 13 of the Pennsylvania Constitution of 1874.

Order of the lower Court reversed.