## Schwing v. Barber

*Compton, Ziegler & Hepford,* for plaintiff.

*Harry Rubin,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for Commonwealth.

HERMAN, J., March 17, 1958.—This matter comes before us by way of a complaint in equity brought by plaintiff, Emil C. Schwing, a workmen's compensation referee, against Charles R. Barber, the then Auditor General of the Commonwealth of Pennsylvania, and Weldon B. Heyburn, the then Treasurer of the Commonwealth, to recover the sum of $17,291.50 with interest, plus an undetermined amount to be paid into the State Employes Retirement System on account of Schwing's retirement.

Plaintiff alleges that this money is due him by virtue of the fact that after he was appointed a workmen's compensation referee on July 20, 1939, at which time his salary as fixed by The Administrative Code of April 9, 1929, P. L. 177, sec. 442, 71 PS §152, was $5,000 per annum, the legislature by the Act of April 28, 1949, P. L. 776, 71 PS §152, Pocket Parts, in-

creased such salaries to $7,500 per annum, and that this increased salary should have been paid to him from April 28, 1949, the date the last mentioned act became effective, until March 28, 1956, the date his term of office terminated.

Plaintiff was appointed workmen's compensation referee on July 20, 1939, by the Governor of the Commonwealth, and took his oath of office on July 22, 1939. The Administrative Code of 1929, supra, provides that such an appointment shall be for a four-year term from the third Tuesday of January after the election of a governor, and until a successor shall have been appointed and qualified.

In the case of Mr. Schwing, the appointment was therefore made effective until the third Tuesday of January, 1943, or until his successor should have been appointed and qualified. No successor having been appointed and qualified on the third Tuesday of January, 1943, and indeed not until March 28, 1956, plaintiff continued as a referee until that latter date, and on that date his term of office ended by virtue of a successor having then been appointed and qualified. During the entire period that plaintiff held his office, he was paid for his services at the rate of $5,000 per annum, and his demand that he now be paid the increased salary from April 28, 1949, to the termination of his office on March 28, 1956, was refused by the Commonwealth.

To plaintiff's complaint in equity, defendants filed preliminary objections setting forth, first, that plaintiff was a public officer of the Commonwealth of Pennsylvania and that he was, therefore, not entitled to any increase in salary by reason of article III, sec. 13, of the Pennsylvania Constitution, and second, that the complaint does not state a cause of action cognizable in equity, because plaintiff has a full, adequate and complete remedy at law by an action in mandamus.

Subsequent to the filing of the preliminary objections, but prior to the argument, the parties, with court approval, stipulated that although the action was begun in equity, the complaint should be treated as a petition for a writ of mandamus, and we will so consider it.[1]

The sole question in this case then is whether a workmen's compensation referee is a public officer as that term is used in article III, sec. 13, of the Pennsylvania Constitution, which reads:

"No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment."

We believe that a workmen's compensation referee is such a public officer.

There have been many cases in our appellate courts defining a "public officer". In Richie v. Philadelphia, 225 Pa. 511 (1909), where the office in question was that of "real estate assessor", the Supreme Court found that such officer was a "public officer" within the meaning of article III, sec. 13, of the Constitution, saying at page 514 and 515:

"It is to be regarded as settled that an office is a public one within the meaning of the constitution if the holder of it exercises grave public functions, and is clothed at the time being with some of the powers of sovereignty."

And later, at page 515, states that: "Whenever it appears that (the) duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one."

---

[1] This same procedure was followed in Smiley v. Heyburn, 70 Dauph. 53 (1956), and while, as we said there, we do not specifically approve of this practice, nevertheless in this action we will continue to treat the case as if it were in mandamus.

And the court there also points out that as is the workmen's compensation referee in the instant case, the real estate assessor was exercising "*semi-judicial* functions, the proper exercise of which was of gravest importance to the entire community". (Italics supplied.) This case sets forth a definition which has been followed in many of our appellate cases. Justice Brown, speaking for the court, defined public officer at page 516, as follows:

"Where, . . . the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer. The powers and duties attached to the position manifest its character."

To the same effect is Commonwealth v. Moffitt, 238 Pa. 255 (1913), and Commonwealth v. Moore, 266 Pa. 100 (1920), two cases much cited on the subject.

We believe that a workmen's compensation referee fits this definition.

One of the latest Supreme Court decisions on the question is the case of Smiley v. Heyburn, 389 Pa. 594, decided in 1957. In this case the Supreme Court, speaking through Mr. Justice Musmanno, held that a member of the Pennsylvania Labor Relations Board was a public officer under article III, sec. 13, of the Constitution, and was, therefore, not entitled to any salary increase granted by the legislature after his appointment. In arriving at its conclusion, the court pointed out what it had previously said in Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398 (1942), that the labor relations board is "quasi-judicial" in character, that "the function of the board is not only to appraise conflicting evidence, to determine the credibility of wit-

nesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances".

The functions of a workmen's compensation referee are likewise to appraise conflicting evidence, determine the credibility of witnesses, resolve primary issues of fact and draw inferences from the established facts and circumstances.

The court in the Smiley case distinguishes the case of Snyder v. Barber, 378 Pa. 377 (1954), wherein a milk control commissioner was held *not* to be a public officer. Mr. Justice Musmanno there states that the Milk Control Commission, like the Public Utility Commission, whose members had previously been held to be *not* public officers, was performing legislative functions on behalf of the legislature, and that the primary functions of these two commissions was ratemaking.

It appears to us that the functions of a workmen's compensation referee are *quasi-judicial* in character and not legislative, and that they are in many respects very similar to the functions of the Pennsylvania Labor Relations Board.

The office of workmen's compensation referee is provided for in The Administrative Code of 1929, supra, where section 202, 71 PS §62, provides:

"The following boards, commissions and *offices* are hereby placed and made departmental administrative boards, commissions, or *offices* as the case may be in the respective administrative departments. . . .

"In the Department of Labor and Industry,

"Workmen's Compensation Board

"Workmen's Compensation Referees, . . ." (Italics supplied.)

It will be noted that the word "office" is specifically used and the placement of the words "Workmen's Compensation Board" and the words "Workmen's Compensation Referee" would negate the assertion

that referees are mere agents of the board. The fact that the referee is not completely subordinate to the board is further brought out in article IV of The Administrative Code where section 441, 71 PS §151, defines the duties of the board, and section 442, 71 PS §152, defines the duties of the referees, and while section 442 provides that the referee shall be subject to the direction and control of the workmen's compensation board, section 2208, 71 PS §568, of the same article provides:

"That the Workmen's Compensation Board and the Workmen's Compensation Referee shall perform their *respective* duties independently of the Secretary of Labor and Industry, or any other official of the department."

And section 2213, 71 PS §573, of the code provides: "Subject to any inconsistent provisions in this act contained, each Workmen's Compensation Referee shall have the power, and his duty shall be, to hear such claims for compensation as shall be assigned to him by the Workmen's Compensation Board, and to perform such other duties as shall be required of him by the Workmen's Compensation Board, *or imposed upon him by law.*" (Italics supplied.)

Both The Administrative Code and the Pennsylvania Workmen's Compensation Act, 77 PS §1, et seq., enumerate powers and duties of the referee among which are to administer workmen's compensation laws of the Commonwealth, to hear such compensation claims as shall be assigned to him, to issue subpoenas requiring the attendance of witnesses and the production of books and papers pertinent to any hearing before him and to examine such witnesses, books and papers, to conduct any investigation which may be deemed necessary to ascertain the facts of any claim or any other matter properly before him, to make findings of fact and conclusions of law and to make

awards or disallowances of compensation, and to make any other order as the petition and answers and the evidence produced before him and the provisions of this act shall in his judgment require.

The Pennsylvania Workmen's Compensation Law, 77 PS §833, provides further that the findings of fact made by a referee to whom a petition has been assigned shall be final unless an appeal is taken as provided by the act, and it is perhaps significant to note that of the approximately 6,000 workmen's compensation cases heard each year by referees, only about 1,000 are appealed to the board, so that in 5/6 of the cases the referee's findings of fact and conclusions of law become final.[2]

The Superior Court many times in passing on the duties of workmen's compensation referees has pointed out that the referee in arriving at his conclusion in a particular case must weigh all of the testimony, pass on the credibility of witnesses, find facts whether based on direct or circumstantial evidence and draw inferences therefrom: Wallace v. Allen, 115 Pa. Superior Ct. 347 (1934); Russell v. Scott Paper Company, 140 Pa. Superior Ct. 84 (1940); Dobrich v. Pittsburgh Terminal Coal Corp., 145 Pa. Superior Ct. 87 (1941); Ma'tkosky v. Midvale Company, 143 Pa. Superior Ct. 197 (1940); Logue v. Gallagher, 133 Pa. Superior Ct. 570 (1938).

In Nesbit v. Vandervort & Curry, 128 Pa. Superior Ct. 58 (1937), at page 62, Judge Keller states:

"In such cases (the Court previously having cited a number of cases based primarily on circumstantial

---

[2] Foreword to Vol. 1 of Title 77 of Purdon's Pa. Statutes Annotated, by Leo G. Knoll, Chairman of the Workmen's Compensation Board of Pennsylvania, written in June of 1952.

Personal contact with the workmen's compensation authorities reveals that in 1957 approximately 6,500 cases were heard by referees and approximately 800 of these were appealed to the board.

evidence) the fact finding body, *the referee*, board or jury, has a right to use the conclusions and tests of ordinary everyday experience and draw the inferences which reasonable men would thus draw from similar facts." (Italics supplied.)

It seems to us that the powers and duties of workmen's compensation referees clearly place them in the category of public officers within the meaning of the Pennsylvania Constitution, article III, sec. 13, and the fact that a number of our appellate court cases have said that referees are only representatives of the workmen's compensation board, the latter of which is the ultimate fact finding body, does not change our opinion. For the most part these statements appear to us to be dicta, but even though referees should be considered merely agents of the board, they would still be public officers as we see it. An *assistant* clerk of a separate orphans' court has been held to be a public officer in Evans v. Luzerne County, 54 Pa. Superior Ct. 44 (1913), and chief deputy sheriffs have likewise been so held in Dewey v. Luzerne County, 74 Pa. Superior Ct. 300 (1920), so it would seem that a mere agent of the board could also be a public officer if he exercises important public functions and is clothed with some element of sovereignty.

The Pennsylvania Supreme Court in Jensen v. Atlantic Refining Company, 262 Pa. 374 (1918), apparently recognized the importance of the duties of a workmen's compensation referee, because it was there pointed out that the Workmen's Compensation Act left to the discretion of the board, *or its referee*, the exercise of its or his best judgment in the ascertainment of facts, and in the same court in McHenry v. Marion Center Coal Mining Co., 286 Pa. 177 (1926), where one of the issues was what the compensation record should contain, the court points out, at page 181, that the compensation referees as well as the com-

pensation board are performing very important functions in determining liabiilty or its absence under the law.

In Shortz v. Farrell, 327 Pa. 81 (1937), in which the question was whether or not a person who appears for another before the workmen's compensation board or a workmen's compensation referee is practicing law, the Supreme Court speaking through Mr. Justice Stern, later Chief Justice, found that participation in hearings before a workmen's compensation referee is the practicing of law. Making no apparent distinction between appearance before a board or a referee, Justice Stern states, at pages 86 and 87:

"The proceedings, though less technical, are conducted much as in court. They are essentially of a judicial character. Were they transferred to a court room and carried on before a judge, it would be readily perceived that they involve the same fundamental characteristics of the determination of property rights and obligations of parties as do other judicial proceedings."

It is interesting to note that Judge Porter of the Superior Court in Chovic v. Pittsburgh Crucible Steel Co., 71 Pa. Superior Ct. 350 (1919), in a workmen's compensation case calls workmen's compensation referees, as well as members of the workmen's compensation board, *"public officers acting under oath"*.

Justice Musmanno's closing paragraph in the case of Smiley v. Heyburn, supra, seems equally cogent to the instant case. There it was said:

"In view of the predominant quasi-judicial functions of the Pennsylvania Labor Relations Board, it cannot be said that it functions merely as an adjunct of the Legislature. The members of the Board, since their duties are principally quasi-judicial in nature and are performed for the public at large—not merely for the legislature as agent—can truly be described as 'pub-

lic offices' within the intendment of Article III, section 13 of the Pennsylvania Constitution of 1874."

We feel that the functions of a workmen's compensation referee are quasi-judicial, that he does not function merely as an adjunct of the legislature, that his duties are performed for the public at large and he can truly be described as a "public officer" within the meaning of article III, sec. 13, of the Pennsylvania Constitution. For these reasons defendants' preliminary objection must be sustained, and we therefore enter the following

### Order

And now, March 17, 1958, the preliminary objection is sustained; the complaint in mandamus dismissed and judgment entered for defendants.