## Brown v. Pennsylvania Board of Parole

*William D. Miller*, for appellant.

*Frank P. Lawley* and *Stanley Winikoff*, Deputy Attorneys General, for Commonwealth.

HERMAN, J., September 11, 1969.—In this appeal from a decision of the Board of Finance and Revenue

we are asked to determine whether or not a member of the Pennsylvania Board of Parole[1] is a public officer under article III, sec. 13 (later sec. 27), of the Constitution of 1874,[2] which reads, "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." We are further asked to determine whether or not a member of the said board is entitled to his salary after his successor has been appointed but before he has qualified.[3]

The parties agreed in writing that a trial by jury be dispensed with pursuant to Act of April 22, 1874, P. L. 109, 12 PS §688.

From the stipulation of facts, which we adopt as our findings of fact, we discover that plaintiff, Richard T. S. Brown, was, on May 5, 1956, appointed a member of the said Board of Parole and served thereon until December 31, 1964, when the then Governor William W. Scranton advised him that his successor, William F. Butler, had been "appointed."[4] Brown was paid his salary to and including January 3, 1965. Butler, his successor, was not "qualified" by the re-

---

[1] Now Pennsylvania Board of Probation and Parole, Act of December 27, 1965, P. L. 1230, sec. 2, effective July 1, 1967, 61 PS §331.2.

[2] The Constitution of 1874 was in effect when the matters here involved occurred. The section number was changed by amendment in 1967.

[3] The act establishing the Pennsylvania Board of Parole, Act of August 6, 1941, P. L. 861, as amended, provides in section 2, 61 PS §331.2: "Said . . . [Pennsylvania Board of Parole] shall consist of three members who shall be appointed by the Governor, by and with the advice and consent of two-thirds of all the members of the Senate, and each of whom shall hold office for a term of four years, or until his successor shall have been duly appointed and qualified . . ."

[4] At no time was it even suggested that Brown was *removed* from office by the Governor's communication to him, or otherwise.

quired Senate approval until March 23, 1965. Brown was, from January 4, 1965, until March 23, 1965, ready, willing and able to perform his duties as a member of the board and so advised the other members, but his services were not accepted and he was not paid for this period. When Brown was appointed to the board, the salary for each member was $11,500 per year but on September 2, 1961, this salary was increased to $14,500 per year to "take effect as soon as permissible under the provisions of the Constitution of Pennsylvania": Act of September 2, 1961, P. L. 1177, 71 PS §773.2. Brown was never paid the increased salary but continued to receive salary at the rate of $11,500 until January 3, 1965, as previously stated.[5]

If a member of the Pennsylvania Board of Parole is a "public officer" under the constitutional provision, as above set forth, then he was not entitled to the increase in salary established by the 1961 Act.

It is our judgment that a member of the Pennsylvania Board of Parole (now the Pennsylvania Board of Probation and Parole) is such a public officer.

To determine whether an administrator is a public officer within the constitutional language, Pennsylvania courts have used two tests. In Snyder v. Barber, 378 Pa. 377 (1954), the court unanimously decided that the functions performed by a commission determined whether its members were public officers. The Pennsylvania Supreme Court there decided that a member of the Pennsylvania Milk Control Commission was not a public officer. Justice Musmanno noted, at p. 380:

---

[5] With court approval, the parties have stipulated that we treat this case as if it were in "mandamus" which we believe is the proper manner to raise the facts here in issue. See footnote at page 359 of Schwing v. Barber, 14 D. & C. 2d 357, 71 Dauph. 299, where a similar procedure was followed.

"The functions performed by the Milk Control Commission, from a governmental point of view, are not unlike those devolving upon the Public Utility Commission. In 1925, . . this Court held that the Commission was in effect a committee created by the legislature 'to do a certain part of its work.' Further, that 'public service commissions must be viewed as deputies of the General Assembly to perform legislative work.' (Com. ex rel. v. Benn, 284 Pa. 421, 435)."

In Smiley v. Heyburn, 389 Pa. 594 (1957), the court used the same test. There, the Supreme Court held that a member of the Pennsylvania Labor Relations Board was a "public officer." The court, at pp. 596-97, distinguished Snyder by holding that "ratemaking" by a Milk Control Commission was exclusively a legislative function. Moreover, the Smiley court clarified the test announced in Snyder by stating that, "Whether a person in government service is or is not a public officer is not dependent on the branch of government which employs him but by the character of the service and the character of the office."

The second test used to determine whether an administrator is a public officer is the test applied in Alworth v. County of Lackawanna, 85 Pa. Superior Ct. 349 (1925). There it was said, at p. 352:

"If the officer is chosen by the electorate, or appointed, for a definite and certain tenure in the manner provided by law to an office whose duties are of a grave and important character, involving some of the functions of government, and are to be exercised for the benefit of the public for a fixed compensation paid out of the public treasury, it is safe to say that the incumbent is a public officer within the meaning of the constitutional provisions in question."

This test was applied in Vega v. Burgettstown Borough, 394 Pa. 406 (1958), police officer not a public officer; Com. ex rel. Foreman v. Hampson, 393 Pa.

467 (1958), county solicitor not a public officer; Com. ex rel. Kelley v. Clark, 327 Pa. 181 (1937), city commissioner is public officer; In re Appeal of Harry W. Bowman, 111 Pa. Superior Ct. 383 (1934), township commissioner is public officer.

This court applied a similarly worded test in Schwing v. Barber, 14 D. & C. 2d 357, 71 Dauph. 299, 301 (1958), where a workmen's compensation referee was held to be a public officer. In Schwing, this court quoted from Richie v. Philadelphia, 225 Pa. 511, 514-15 (1909): "[A]n office is a public one within the meaning of the constitution if the holder of it exercises grave public functions, and is clothed at the time being with some of the powers of sovereignty." Also, at page 515 of Richie the court said: " [W]henever it appears that [the] . . . duties are of a grave and important character, involving in the proper performance of them some of the functions of government, the officer charged with them is clearly to be regarded as a public one." Justice Brown defined public officer at page 516: "Where . . . the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties, and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer. The powers and duties attached to the position manifest its character": Accord, Commonwealth v. Moore, 266 Pa. 100 (1920); Commonwealth v. Moffitt, 238 Pa. 255 (1913).

Some officials who fit this definition have been held to be not public officials because their functions are purely legislative and are basically rate-fixing: Snyder v. Barber, 378 Pa. 377 (1954); Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925).

In the Schwing opinion, supra, this court also pointed out the rate-fixing distinction made by the

Supreme Court and by the Attorney General in his opinion no. 245, dated October 25, 1961, and made a part of the record in this case.

In Commonwealth ex rel. Banks v. Cain, 345 Pa. 581 (1942), the Parole Board was attacked as violating executive and judicial authority. In upholding the constitutionality of the Parole Board the activities of the board were described, at pp. 583-84:

"The act in question, which became effective on June 1, 1942, provides for the establishment of a uniform and exclusive system for the administration of parole in Pennsylvania. It creates an independent administrative board with exclusive power to parole and reparole, to commit and recommit for violations of parole, and to discharge from parole all persons theretofore or thereafter sentenced by any court in the Commonwealth to imprisonment in any penal institution of the State or of a county."

At page 587, the court said: "The legislature has exclusive power to determine the penological system of the Commonwealth." Later, in the same opinion the court commented: "The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be entrusted by the legislature to non-judicial agencies" (Ibid.), and pointed out that while the court or jury determine the guilt or innocence of an accused and the court pronounces the penalty provided by law, the manner of executing the sentence is prescribed by the legislature to be put in force and effect by administrative officers.

In Com. ex rel. Hendrickson v. Pennsylvania State Bd. of Parole, 409 Pa. 204 (1962), the Pennsylvania Supreme Court determined that a hearing prior to recommitment for parole violation was a right, but that such hearing was not quasi-judicial or trial-like. "The

hearing procedure, however, is only as extensive as the legislature intended to make it": Page 208.

All of the activities of the Board of Parole lead us to only one conclusion and that is that its members come squarely within the definition of what constitutes a public officer under the laws of Pennsylvania, and do not come within the cases describing mere "agents" of the legislature. As such, public officer Brown was not entitled to the increased salary fixed during his tenure by the Act of 1961. See official opinion of the Attorney General of June 28, 1949, reported in 67 D. & C. 530 (1949); official opinion of the Attorney General no. 245, supra.

We turn now to the question of salary for the period between January 4, 1965, and March 23, 1965. To this we think Brown is entitled but only at the rate of $11,500 per year, the rate in effect when he was appointed.

The Act of Assembly creating the board clearly provides that each member thereof "shall hold office for a term of four years, or until his successor shall have been duly *appointed and qualified*." [6] Brown had held office more than four years on December 31, 1964, when he was notified that his successor had been *appointed*. The successor was not, however, at that time "qualified" because qualification required the approval of two thirds of the Senate. Indeed, he may not even have been "appointed." In Lane v. Commonwealth ex rel., 103 Pa. 481, 485 (1883), the court states that "Until the governor executes the commission [after approval of the Senate], the appointment is not made." In that case as in the instant case the language of the statute did not exactly follow the constitutional language of "He [the Governor] shall *nominate* and, by and with the advice and con-

---

[6] Emphasis ours throughout.

sent of two-thirds of all the members of the Senate *appoint* . . . such . . . officers of the commonwealth as he is or may be authorized by the Constitution or by law to appoint; . . .": art. IV, sec. 8, of the Constitution of 1874. In Lane, as here, the statute omitted the word "nominate" but provided that the officer should be appointed by and with the advice and consent of the Senate.[7] The Supreme Court there had no difficulty in finding that the language of the statute did not give the Governor any more power in appointments than if the constitutional language had been employed. See also, Com. ex rel. Lafean v. Snyder, 261 Pa. 57 (1918). It follows, therefore, that plaintiff's term of office was not terminated when he was merely *notified* that the Governor had appointed his successor, but on the contrary, he held over until March 23, 1965. See Commonwealth ex rel. v. Kelly, 322 Pa. 178 (1936). It has been stipulated as a fact that Brown was ready, willing and able to perform his duties as a member of the board and we conclude that he is, therefore, entitled to be paid his salary for this period of holdover at the rate of $11,500 per year. See 67 C. J. S. Officers §85 (1950), where it is said: "A de jure officer holding over until the election or appointment of a qualified successor is entitled to the compensation of the office during such period." See also 43 Am. Jur., Public Officers, §343 (1942), to the same effect.

In view of what we have said herein, we arrive at the following

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the matter before us.

---

[7] The statute in the Lane case omitted also the words "two-thirds of all the members" when speaking of the requirements of the Senate's advice and consent.

238

2. Members of the Pennsylvania Board of Parole, now the Pennsylvania Board of Probation and Parole, are public officers within the meaning of section 13 of article III, now section 27 of article III, of the Constitution of 1874.

3. Richard T. S. Brown having been appointed a member of the Pennsylvania Board of Parole on May 5, 1956, and confirmed by the required vote of the Senate on January 25, 1960, was not entitled to the increase in salary provided for members of the said board by the Act of September 2, 1961, P. L. 1177, 71 PS §773.2.

4. The successor to the said Brown not having been qualified until March 23, 1965, and Brown not having been removed from office as provided by law but on the contrary at all times being ready, willing and able to serve, the said Richard T. S. Brown is entitled to his salary at the annual rate of $11,500 from January 4, 1965 until March 23, 1965.

We, therefore, enter the following

### ORDER

And now, September 11, 1969, it is ordered, adjudged and decreed that judgment be entered against the Commonwealth of Pennsylvania and in favor of Richard T. S. Brown in the amount of $2,426.27 unless exceptions be filed within 20 days hereof.

The prothonotary is directed to notify the parties or their counsel of this order forthwith.